KAREN PARLATO *v.* DANIEL PARLATO
(AC 33410)

Bear, Espinosa and Mihalakos, Js.

Argued December 5, 2011—officially released April 17, 2012

*George G. Mowad II*, with whom, on the brief, were *Melissa A. Scozzafava* and *Jaclyn L. Parlato*, for the appellant (defendant).

*Steven H. Levy*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Daniel Parlato, appeals from the judgment of the trial court, finding him in contempt for failing to comply with a pendente lite order that he return to the marital estate money that he withdrew from the parties' joint home equity line of credit approximately four weeks before he was served with the dissolution complaint filed by the plaintiff, Karen Parlato. On appeal, the defendant claims that the court was without the authority to order him to return the money to the marital estate and that the court acted in abuse of its discretion when it found him in contempt for failing to follow an order that the court had no authority to issue. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. On January 3, 2011, the defendant withdrew $250,000 from the parties' joint home equity line of credit without the plaintiff's knowledge or consent. On January 31, 2011, the plaintiff served the defendant with a complaint seeking a dissolution of the parties' marriage; the return date on the complaint was February 15, 2011. On March 1, 2011, the plaintiff filed a motion for order pendente lite, in which she asked the court to order the defendant to return to the marital estate the $250,000 he had withdrawn from the line of credit. On March 21, 2011, the court, after a hearing, ordered the defendant to return the $250,000 on or before April 4, 2011. After the court learned, on April 4, 2011, that the defendant had not returned the money, it found the defendant in contempt and ordered him to provide a $125,000 cash bond by April 18, 2011, or face incarceration. On April 18, 2011, the court ordered the defendant

to be incarcerated for failing to provide the bond; the purge amount was set as $125,000, and a review date was set for April 25, 2011. When the defendant had failed to pay the purge amount on April 25, 2011, the court set the next review date as May 2, 2011. On April 29, 2011, the defendant filed the present appeal. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the court abused its discretion in finding him in contempt.[1] He argues that the finding of contempt was based on the violation of an order that the court was without authority to issue, namely, the order that he repay the $250,000 that he withdrew from the parties' line of credit before the action for dissolution was commenced. We are not persuaded.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . An order of the court must be obeyed until it has been modified or successfully challenged." (Citation omitted; internal quotation marks omitted.) *Baker* v. *Baker*, 95 Conn. App. 826, 830–31, 898 A.2d 253 (2006).

---

[1] The plaintiff argues, in part, that the defendant's appeal should be dismissed because he failed to appeal from the April 4, 2011 finding of contempt, pursuant to Practice Book § 63-1 (a), within twenty days. The twenty day time limit set forth in Practice Book § 63-1 (a), however, is not jurisdictional, and where the appellee has failed to file a motion to dismiss the appeal within the ten day time limit set forth in Practice Book § 66-8, we have deemed any claim of untimeliness to be waived. See *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 499, 945 A.2d 1043 (failure to file motion to dismiss appeal as untimely constitutes waiver of right to dismissal on that nonjurisdictional ground), cert. denied, 289 Conn. 948, 960 A.2d 1037 (2008). The plaintiff, having failed to file a motion to dismiss the defendant's appeal, has waived her right to challenge its timeliness.

"The paramount role of a court when considering domestic relations cases is one of a court of equity. The court's equity powers are essential to its ability to fashion the appropriate relief in domestic relations cases. The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . These powers, although not expressly given to the court by statute, have been held to be inherent powers of the trial court . . . . *LaBow* v. *LaBow*, 13 Conn. App. 330, 351, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988); see also *Darak* v. *Darak*, 210 Conn. 462, 478, 556 A.2d 145 (1989)." (Internal quotation marks omitted.) *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 208, 572 A.2d 1032 (1990).

Although the defendant claims that the court was without authority to order him to return funds that were taken before the action for dissolution was initiated on January 31, 2011, by service on him and before any automatic orders[2] had gone into effect, we conclude,

[2] Practice Book (2011) § 25-5 provides in relevant part: "(a) The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage or civil union, legal separation, or annulment, or of an application for custody or visitation. An automatic order shall not apply if there is a prior, contradictory order of a judicial authority. The automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties:

"(1) Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

on the facts of this case, that the court had the authority to issue such an order. We further conclude, therefore, that because the defendant failed to comply with this order, the court's finding of contempt was not an abuse of discretion.

. The record reveals the following additional relevant facts. On March 11, 2011, the plaintiff filed a motion for order, requesting that the court order the defendant to repay the $250,000 that he had withdrawn from the parties' line of credit. The defendant did not file an objection. The court set the matter down for a hearing on March 21, 2011. On that date, the plaintiff's counsel explained that the defendant withdrew the money shortly before the dissolution action had commenced and that this was a "depletion of assets issue." Both the plaintiff and the defendant testified. The defendant admitted that he withdrew the money, but claimed that it was to repay an eleven year old debt to his children for losses he had suffered in some investments that were held in his name for their benefit. He stated that he gave $230,000 of the money to his oldest daughter, Michelle Parlato, who was experiencing financial difficulties as she was going through a divorce, and that $20,000 was used to pay his and the plaintiff's household expenses. The defendant also testified that he took the $250,000 and put $100,000 into his daughter's account and $150,000 into his checking account because he "needed to see how much she really needed at that point in time because [he] didn't want to give her a whole $230,000." The defendant did not explain at the March 21, 2011 hearing how or when he transferred the additional money to his daughter, nor did he explain how giving his daughter this money allegedly to help with her financial difficulties during her divorce equated to paying off a debt to his children.

Following the defendant's testimony, the court clarified with each counsel that there was no claim that this

was in violation of the automatic orders of the court. Counsel agreed. The plaintiff's counsel asserted that this was a dissipation of assets issue and that the court should exercise its equitable powers to remedy the dissipation. The defendant's attorney argued that this issue should be taken up and considered at the time of the final dissolution in accordance with General Statutes § 46b-81. He also argued that the plaintiff did not bring a claim for fraudulent conveyance against the daughter and that she, not the defendant, was in possession of the money. The court found that the defendant was not credible and that the defendant's assertion that he gave the money to his daughter to satisfy an eleven year old debt was not to be believed. The court ordered the defendant to return the money within two weeks or be held in contempt.

The court next held a hearing on April 4, 2011, at which it learned that the defendant had not repaid the money. The defendant's counsel told the court that the defendant's daughter refused to return the money to her father. During that hearing, the defendant testified again regarding the $230,000 that he alleged he had given to his daughter. He stated that he deposited $100,000 into her account and then made an online transfer of the other $130,000. He claimed that he no longer had access to the money and that his daughter refused to return it. The plaintiff's attorney then called Michelle Parlato, who had been subpoenaed, to the witness stand.

Michelle Parlato testified that she had no knowledge of the bank transactions that allegedly were made by her father but that "[t]he bank account that the funds got transferred into . . . was a joint account for [her]-self and [her] father." She also testified that she first learned of the money sometime in January when she received it from her father. When questioned by the plaintiff's attorney as to whether she included that

money on her February 17, 2011 financial affidavit in her dissolution action, Michelle Parlato stated that she did not include it because she did not know about it at that time. After further questioning, Michelle Parlato relayed the following events: Sometime in January, her father brought her a box as a gift and told her not to open it until March 15, 2011, the anniversary of her sister's death; on February 18, 2011, the day after signing her financial affidavit, her father told her it was okay to open the box; and the box contained $230,000 in cash, which she did not list on her financial affidavit on February 17, 2011, because she did not know what was in the box. She also stated, when asked where the cash was, that it was in her possession, at her house.

The defendant testified a second time at the April 4, 2011 hearing. During his second testimony, he stated that he withdrew cash from his accounts in the second or third week of January, put it in a box and gave it to his daughter to be opened on the anniversary of her sister's death. When asked to explain whether this was a repayment of a debt to his children or a gift, as his daughter had stated, the defendant said it was a matter of semantics.

During argument, the defendant's counsel argued that this matter should be considered at the time of final dissolution, that his client did not have the funds any longer and that the court had no jurisdiction to order Michelle Parlato to return the money. The court very clearly found that the defendant and Michelle Parlato were not credible, found the defendant in contempt and ordered that he post a $125,000 bond on April 18, 2011, or face incarceration. On April 18, 2011, the court ordered the defendant incarcerated.

On April 25, 2011, the court held another hearing to review the defendant's case. The defendant still had not posted bond. After argument by counsel, the court

stated that it did not believe that the defendant had given his daughter $230,000 to pay off a debt. The court also stated that it wanted to see $125,000 put back into the marital estate and that the defendant should turn that amount over to the plaintiff's attorney to be held in trust until the final dissolution.

In a May 23, 2011 hearing, the court explained that the issue regarding the defendant's contempt was "where this money went and what happened to the money . . . ." The court stated that it had made a finding and that it was not going to revisit that finding—"it was not a payment of a debt and it wasn't a gift, neither one." The defendant's actions were, in the words of the court, "an attempt to hide moneys—hide money from the marital estate."

It is quite clear from our review of the testimony and other evidence in this case that the court did not believe the testimony of the defendant or Michelle Parlato. The court found that the defendant had neither given nor repaid the money to Michelle Parlato. Rather, the court concluded, on the basis of the testimony presented, that the defendant was attempting to hide marital assets, i.e., to place them beyond the reach of the plaintiff and the court. The court reasonably could have found that the defendant, despite his testimony and that of Michelle Parlato, had access to the funds allegedly transferred to Michelle Parlato. Contrary to the assumption by both parties on appeal, the court did not find that the defendant had dissipated the funds he unilaterally took from the parties' joint home equity line of credit; rather, it found that he was attempting to conceal and protect this asset by placing it allegedly under the control of his daughter. Although the defendant's attempt at concealment and protection began before the automatic orders took effect, it continued after the orders were in place and, therefore, was a violation of those orders. Practice Book (2011) § 25-5 (a) provides in relevant

part: "The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage . . . (1) Neither party shall . . . conceal . . . without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties . . . ."

On the basis of the findings made by the trial court, which are not contested on appeal, we conclude that the court reasonably determined that the defendant and his daughter were engaged in a scheme to conceal and protect marital assets that had been taken by the defendant for no valid reason or purpose, and, whether viewed from the perspective of the court's inherent powers as a court of equity or its statutory authority to enforce the automatic orders, it had the power to order the defendant to return to the marital estate the $250,000 that he had withdrawn from the parties' joint home equity line of credit and to hold him in contempt for his wilful failure to do so.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Even if the defendant placed the funds he unilaterally took from the parties' joint home equity line of credit in the possession of his daughter and she thereafter refused to return them to him, he is the author of his own destiny and should reasonably have understood that he would bear the consequences thereof; see *Pappas* v. *Pappas*, 164 Conn. 242, 320 A.2d 809 (1973); especially because of his unwillingness or inability to provide any credible statement of or explanation for his actions. See *Scher* v. *National Assn. of Securities Dealers*, 386 F. Sup. 2d 402, 403–404 (S.D.N.Y. 2005), aff'd, 218 Fed. Appx. 46 (2d Cir. 2007).