## GARVEY FOX *v.* MAUREEN FOX
## (AC 34815)

Gruendel, Keller and Bishop, Js.

Argued October 28—officially released December 10, 2013

*Mark M. Kratter*, for the appellant (plaintiff).

*George J. Markley*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Garvey Fox, appeals from the judgment of the Superior Court denying his petition for appeal from the decision of a family support magistrate. The plaintiff's appeal to this court is premised on his claim that the magistrate improperly found him in contempt due to his failure to comply with certain child support obligations. We affirm the judgment of the Superior Court.[1]

The record discloses the following undisputed facts. The plaintiff and the defendant, Maureen Fox, married in 1996, and two children were born of the marriage. Following the subsequent breakdown of their marriage, the parties voluntarily entered into a comprehensive separation agreement that the court incorporated into its judgment of dissolution. On March 3, 2005, the court dissolved their marriage, finding that it had broken down irretrievably, without attributing fault to either party as to the cause.

Pertinent to this appeal is § 1.3 of the separation agreement. It provides in relevant part: "The [plaintiff] shall pay a combination of child support and qualified day care expenses to the [defendant] at the rate of $2250 per month . . . . The [plaintiff] shall pay to the [defendant] $1125 due for March 1, 2005, by the end of today [March 3, 2005]. The [plaintiff] shall also pay

---

[1] In hearing appeals from the decisions of a family support magistrate, the Superior Court acts as an appellate body. See General Statutes § 46b-231 (n) (permitting person aggrieved by final decision of family support magistrate to appeal to Superior Court).

the [defendant] the sum of $2000, within thirty days, representing the shortfall in his contributions, pendente lite." As the plaintiff acknowledged under oath on March 18, 2010, he was delinquent in meeting that child support obligation from the very date of dissolution.

The defendant thereafter filed multiple motions for contempt due to the plaintiff's failure to comply with his child support obligations. On February 17, 2009, the parties entered into a handwritten agreement (agreement) concerning the plaintiff's child support arrearage. That agreement states: "We agree that there is an outstanding balance of $45,000 of child support in arrears. [The plaintiff] agrees to pay arrears of $10,000 increments of every comm check in the amount of $20,000 and more until said balance is paid. [The plaintiff] will pay $500 per month on a temporary basis of three months [beginning] March 1, 2009."[2] Both parties signed the agreement, which was entered as an order of the court that day.

Despite that agreement, no child support payments followed. Instead, the plaintiff, a real estate agent in Greenwich, filed a motion to modify the child support order on November 2, 2009. The defendant filed an objection to that motion, as well as two motions for contempt relevant to this appeal. Filed on December 16, 2010, the first motion alleged that the plaintiff had failed to comply with the court's child support order entered as part of the judgment of dissolution on March 3, 2005.[3] The defendant filed a second motion for contempt on February 10, 2011, stemming from the plaintiff's failure to comply with the agreement entered into by the parties.

---

[2] On March 18, 2010, the defendant testified that the actual amount of the plaintiff's child support arrearage was approximately $72,000. She further testified that the $45,000 figure was a stipulated arrearage amount that she accepted in February, 2009, with the understanding that the plaintiff was going to make substantial, if not full, payment within a relatively short period of time.

[3] That motion alleged an outstanding child support arrearage of $50,250.

The plaintiff's motion for modification and the defendant's motions for contempt were heard by Family Support Magistrate William E. Strada, Jr., over the course of nine separate days between December 14, 2009, and July 14, 2011. During that hearing, the magistrate was presented with an abundance of documentary and testimonial evidence.

The magistrate issued his written decision on December 15, 2011. With respect to the defendant's motions for contempt, the court specifically found that the plaintiff "knew of the [child support] orders"; that "the orders were clear and unambiguous"; and that "the plaintiff had the ability to pay and the plaintiff's failure to pay was, and remains, wilful." As a result, the magistrate found the plaintiff in contempt. The magistrate expressly granted both of the defendant's motions for contempt[4] and entered the following orders: "The plaintiff is ordered to pay a purge in the amount of $10,000 on/before January 13, 2012. The plaintiff's failure to pay his purge will result in immediate incarceration. In addition, the plaintiff is ordered to make all [monthly] payments and a lump sum payment in the amount of $5000 on/before February 10, 2012. Finally, the plaintiff is ordered to pay the balance of attorney's fees awarded to the defendant in the amount of $4163 on/before March 15, 2012."[5]

[4] The magistrate explicitly noted in his memorandum of decision that the defendant "alleges that the plaintiff should be found in contempt for, first, his failure to pay child support and, second, for his failure to honor the agreement entered February 17, 2009." In fashioning his orders, the magistrate referenced the specific docket entry numbers for those two motions, stating: "The defendant's motions for contempt (#156.00 and #158.00) against the plaintiff are granted."

[5] The magistrate further granted the plaintiff's motion for modification "effective the date the plaintiff pays his purge." The magistrate ordered the plaintiff "to pay $1010 per month for current child support and to pay $202 per month toward his arrears of child support in the amount of $68,335 as of December 13, 2011." That aspect of the magistrate's decision is not at issue in this appeal.

The plaintiff filed a motion for reconsideration, which the magistrate denied. He then filed with the Superior Court a petition for appeal from the magistrate's decision. The court denied that petition on June 27, 2012, and this appeal followed.

I

On appeal, the plaintiff principally contends that the magistrate erroneously found him in contempt for failing to comply with the agreement.[6] Specifically, the plaintiff argues that the magistrate's finding is clearly erroneous because the prerequisite to imposition of his obligation to pay child support to the defendant under the agreement—the attainment of a "comm check in the amount of $20,000 or more"—never transpired. We disagree.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must

[6] The magistrate's finding of contempt was predicated on two grounds. The defendant's February 10, 2011 motion for contempt arose from the plaintiff's alleged failure to comply with the aforementioned agreement requirement, while her December 16, 2010 motion for contempt alleged that the plaintiff had failed to comply with the court's ongoing child support order entered as part of the judgment of dissolution on March 3, 2005. In his December 15, 2011 decision, the magistrate granted both motions and ordered the payment of certain purge, lump sum and attorney's fees amounts. The plaintiff's challenge to the contempt finding in the present case pertains solely to the magistrate's finding that he failed to comply with the agreement. He does not contest in any manner the magistrate's finding that he failed to comply with the child support order entered at the time of dissolution. As a result, irrespective of the merits of the distinct claim advanced in the appeal, the remedy fashioned by the magistrate in ordering payments in connection with the contempt motions must be sustained, as the record contains no indication that that remedy pertained exclusively to the finding concerning the agreement. To the contrary, a plain reading of the December 15, 2011 decision indicates that the remedy fashioned by the magistrate pertained to both findings.

be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . An order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Parlato* v. *Parlato*, 134 Conn. App. 848, 850, 41 A.3d 327 (2012). In the context of a motion for contempt, we review a magistrate's factual findings to determine whether they are clearly erroneous. See *Dionne* v. *Dionne*, 115 Conn. App. 488, 494, 972 A.2d 791 (2009). "The clearly erroneous standard of review provides that [a] [magistrate's] determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . It is the family support magistrate's function to weigh the evidence and to determine credibility and we give great deference to his or her findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [magistrate] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the [magistrate's] ruling. . . . The clearly erroneous standard imposes on the appellant a heavy burden of persuasion." (Citations omitted; internal quotation marks omitted.) *Commissioner of Social Services* v. *Joyner*, 136 Conn. App. 826, 832, 51 A.3d 1139 (2012).

The record before us furnishes an ample basis for the magistrate to find that the plaintiff did indeed generate a commission in excess of $20,000, thereby triggering his obligation under the agreement to make payments to the defendant to satisfy the $45,000 child support arrearage that the parties agreed existed on February 17, 2009. Bryan Dinkelacker, the owner and managing broker at Engle and Volkers, LLC, where the plaintiff was employed, testified that the plaintiff received a commission of $25,387.50 for the sale of property known as 65

Tomack that closed in December, 2009, for $3,385,000. Dinkelacker also testified that the plaintiff received a commission of $31,250 for the sale of property known as 23 Bedford Road that closed in December, 2010, for $3,135,000.

The magistrate explicitly found "no good faith in the plaintiff's honoring the [agreement]." By way of example, the magistrate discussed the plaintiff's sale of adjoining properties located at 35 Shore Road and 39 Shore Road to the same buyer in the spring of 2011. As the magistrate stated in his decision, "[t]he testimony concerning the sale of [those] adjoining properties . . . to the same corporate buyer was less than credible. The transactions were dated March 23, 2011, and June 16, 2011, respectively, less than twelve weeks apart. By splitting the transactions, the plaintiff and his employer ensured that the plaintiff's commission would not reach the $20,000 denotation established in the [agreement]."[7] The evidence in the record indicates that the combined commissions to the plaintiff's office generated by those two sales totaled $55,000. The plaintiff admitted in his testimony that, had the two sales occurred at the same time, his commission would have exceeded $20,000.

The magistrate also was presented with evidence regarding the plaintiff's financial practices. At the March 18, 2010 hearing, the plaintiff testified that he did not have a bank account or checking account, and that when he received a commission check, he would cash it at the bank on which it was drawn. He testified that he did not have a credit card and paid all of his bills in cash, which he kept in a drawer at his home. The plaintiff also acknowledged that he is a convicted felon who served time in prison for crimes involving

---

[7] Although his appellate brief avers that the 35 Shore Road and 39 Shore Road properties were sold to "two different investors," the plaintiff testified before the magistrate that they were sold to the same purchaser.

fraud. During her testimony before the magistrate on July 7, 2011, Laura Stevens, who at that time was the plaintiff's wife, testified that the plaintiff deposited all of his commission checks into her bank account. Stevens testified that, for a period of approximately five months from December 17, 2010, through May 24, 2011, the plaintiff had deposited more than $30,000 in commission checks into her account. Furthermore, the plaintiff filed a financial affidavit in September, 2010, in which he claimed a net annual income of approximately $27,000. Only two months earlier, as part of a credit application filed with BMW Financial Services, the defendant stated that his annual income was $60,000.

In addition, the magistrate heard testimony regarding various maneuvers that resulted in the plaintiff's receiving decreased net commissions from his real estate sales. He entered into a written agreement on company letterhead with Danielle Scialpi, another real estate agent in his office, whereby he agreed to split all commissions evenly with her. The plaintiff testified that the company paid many of his bills, such as cell phone, dry cleaning and lunch expenses, which later were subtracted from his commission payments. The plaintiff admitted that such moneys paid on his behalf by the company were advances against his future commissions. In addition, Dinkelacker permitted the plaintiff to borrow thousands of dollars from the company. The plaintiff testified that he borrowed "[p]robably around ten grand" in 2009, and that he is expected to repay that amount to the company. When questioned as to whether a written agreement existed regarding the repayment of those funds, the plaintiff testified, "I think there is," but stated that he did not have a copy of that agreement and did not know where it was located. The plaintiff also acknowledged that the company on occasion retained as much as 30 percent of his commissions for reasons he could not explain. When questioned

about one specific transaction in which the company took $3500 out of a commission that should have been $10,500, the plaintiff testified that "I'm assuming that was [for] some of the money that was loaned to me."

The foregoing is evidence on which the magistrate reasonably could find that the plaintiff generated commissions in excess of $20,000, thereby triggering his obligation under the agreement to make payments to the plaintiff to satisfy his child support arrearage. It further substantiates the magistrate's findings that the plaintiff possessed the ability to pay his child support obligation under the agreement and that his refusal to do so was wilful. Making every reasonable presumption in favor of the correctness of the magistrate's ruling, we conclude that the magistrate did not abuse his discretion in finding the plaintiff in contempt. Accordingly, the Superior Court properly denied the plaintiff's petition for appeal from the magistrate's decision.

## II

In the statement of issues to his appellate brief, the plaintiff also listed a claim as to "whether the Superior Court judge erred by denying the appeal and not remanding the issue of retroactivity back to the family support magistrate . . . ." He nevertheless failed to provide any analysis of that claim. The "argument" portion of his appellate brief consists of four pages, lacks a single citation to legal authority or the record below, and pertains almost exclusively to the plaintiff's claim that the magistrate erroneously found that he had obtained a commission in excess of $20,000. The very end of the fourth and final page of that "argument" contains the first—and only—mention of the plaintiff's retroactivity claim, where the plaintiff baldly asserts that "[t]he issue of retroactivity was never addressed."

It is well established that "[w]e are not required to review claims that are inadequately briefed. . . . We

consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Absent the requisite analysis, we decline to review any claim concerning the issue of retroactivity.

The judgment is affirmed.

In this opinion the other judges concurred.