******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

Alvord, Keller and Prescott, Js.

*Syllabus*

The plaintiff, M. Co., which had obtained a default judgment in California
against the defendants, J and G, brought this action seeking to enforce
that judgment in Connecticut, alleging claims for breach of contract and
quantum meruit. Following a trial, the trial court rendered judgment in
favor of M Co., from which the defendants jointly appealed to this court,
which affirmed the decision of the trial court. Thereafter, the defendants,
on the granting of certification, appealed to our Supreme Court, which
reversed this court's judgment, concluding that it did not have jurisdic-
tion over the appeal due to a lack of a final judgment as to G, and
remanded the case to this court with direction to dismiss the appeal.
M Co. subsequently filed in the trial court a withdrawal of the action
as to the breach of contract and quantum meruit counts against G, and
the defendants jointly filed the present appeal to this court. M Co. filed
a motion to dismiss the appeal, arguing that it was untimely and, thus,
subject to dismissal. The defendants subsequently filed a motion for
permission to file a late appeal, which this court granted nunc pro tunc.
*Held* that M Co.'s motion to dismiss the appeal was denied; contrary to
M Co.'s claim that this court should dismiss the appeal because its
untimeliness constituted a jurisdictional defect, the twenty day time
limit for filing an appeal pursuant to the applicable rule of practice
(§ 63-1) is not subject matter jurisdictional and this court may, in its
discretion, allow a party to file an untimely appeal, and although the
general rule against hearing untimely appeals is necessary, in the present
case good cause existed for allowing the defendants' appeal to proceed,
as the policy considerations that ordinarily weigh against granting
untimely appeals either were not present or were overborne by compet-
ing considerations, the defendants did not strategically employ delay
tactics for their own benefit, and allowing the defendants to file a late
appeal would not prejudice M Co., whereas, if this court were to decline
to allow the appeal to go forward, the defendants would be unduly
deprived of their appellate rights.

Considered June 26—officially released October 15, 2019

*Procedural History*

Action to, inter alia, enforce a foreign judgment ren-
dered against the defendants in California, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield and tried to the court, *Tyma, J.*; judg-
ment for the plaintiff, from which the defendants
appealed to this court, which affirmed the trial court's
judgment; thereafter, the defendants, on the granting
of certification, appealed to our Supreme Court, which
reversed the judgment of this court and remanded the
case to this court with direction to dismiss the defen-
dants' appeal; subsequently, the plaintiff filed a with-
drawal of action as to two counts of its complaint, and
the defendants appealed to this court; thereafter, the
plaintiff filed a motion to dismiss the appeal; subse-
quently, the defendant filed a motion for permission to
file a late appeal. *Motion to dismiss denied; motion
for permission to file late appeal granted.*

*Anthony J. LaBella*, in support of the motion to dis-

miss and in opposition to the motion for permission to file late appeal.

*Michael S. Taylor,* in opposition to the motion to dismiss and in support of the motion for permission to file late appeal.

*Opinion*

PRESCOTT, J. The plaintiff, Meribear Productions, Inc., filed a motion to dismiss the appeal of the defendants, Joan Frank and George Frank. The plaintiff argued that the defendants' joint appeal was untimely and, thus, subject to dismissal. See Practice Book §§ 63-1 and 66-8. In response, the defendants filed a motion for permission to file a late appeal. The defendants argued that permission to file a late appeal was warranted because they would suffer a loss of their appellate rights if the appeal was not allowed. We agreed with the defendants and, therefore, granted nunc pro tunc the defendants' motion to file a late appeal, and denied the plaintiff's motion to dismiss the appeal as untimely, indicating in our order that an opinion would follow. We write to explain our reasons for permitting this late appeal.

The following procedural history is relevant to our discussion of the parties' motions. In 2011, the defendants, who were selling their home in Westport, hired the plaintiff to provide home staging services. See *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 711–12, 183 A.3d 1164 (2018). The defendants ultimately defaulted on their payment obligations to the plaintiff and, in 2012, the plaintiff, a California corporation, filed an action against the defendants in California Superior Court. The California court entered a default judgment against the defendants in the amount of $259,746.10.

Thereafter, in 2013, "the plaintiff commenced the present action in Connecticut seeking to hold the defendants jointly and severally liable under the foreign default judgment and to recover additional attorney's fees, costs, and postjudgment interest. In response to the defendants' assertion of a special defense that the judgment was void because the California court lacked personal jurisdiction over them, the plaintiff amended its complaint to add two counts seeking recovery against both defendants under theories of breach of contract and quantum meruit. Prior to trial, a prejudgment attachment in the amount of $259,746.10, together with 10 percent postjudgment interest, pursuant to provisions of the California Code of Civil Procedure, was entered against the Westport real property owned by Joan Frank.

"In a trial to the court, the plaintiff litigated all three [counts of the complaint]. In its posttrial brief, the plaintiff requested that the court give full faith and credit to the California judgment, plus postjudgment interest; '[i]n the alternative,' find that the defendants had breached the contract and award damages in the same amount awarded in the California judgment, plus interest, fees and costs; and, '[f]inally, in the event [that] neither request is . . . granted,' render judgment in the plaintiff's favor on the quantum meruit count in the

same amount.

"The court issued a memorandum of decision finding in favor of the plaintiff on count one against George Frank and on count two against Joan Frank. The court acknowledged at the outset that the three count complaint was for 'common-law enforcement of a foreign default judgment, and alternatively, for breach of contract and quantum meruit.' Turning first to count one, the trial court determined that, as a result of the manner in which process was served, the California court lacked personal jurisdiction over Joan Frank but had jurisdiction over George Frank. In rejecting George Frank's argument that the exercise of jurisdiction did not comply with the dictates of due process, the court cited his admission 'that he signed a guarantee of the staging agreement . . . that provides that Los Angeles is the appropriate forum.' Consequently, the court stated that it would render judgment on count one for Joan Frank and against George Frank.

"In resolving the remaining counts, the court made no further reference to George Frank. As to count two, the court concluded that Joan Frank had breached the contract, that she could not prevail on her special defenses to enforcement of the contract, and that judgment would be rendered for the plaintiff and against Joan Frank. As to count three, the court cited case law explaining that parties routinely plead alternative counts of breach of contract and quantum meruit, but that they are only entitled to a single measure of damages. The court concluded: 'The plaintiff has proven that Joan Frank breached the contract. Therefore, the court need not consider the alternative claim for quantum meruit.'

"The court awarded damages against George Frank on count one and against Joan Frank on count two. Although both awards covered inventory loss and lost rents, the California judgment included prejudgment interest and attorney's fees, whereas the breach of contract award included late fees related to the rental loss. The judgment file provided: 'The court, having heard the parties, finds the issues for the plaintiff. Whereupon it is adjudged that the plaintiff recover of the defendant Joan E. Frank $283,106.45 damages and that the plaintiff recover of the defendant George A. Frank $259,746.10.' The court indicated that a hearing would be scheduled on attorney's fees, but did not address the subject of postjudgment interest." *Meribear Productions, Inc.* v. *Frank*, supra, 328 Conn. 712–14.

On December 18, 2014, the defendants jointly appealed from the judgment, and this court affirmed the decision of the trial court. *Meribear Productions Inc.* v. *Frank*, 165 Conn. App. 305, 140 A.3d 993, rev'd, 328 Conn. 709, 183 A.3d 1164 (2016). The defendants' certified appeal to our Supreme Court followed.

During the course of oral argument before our Supreme Court, the court inquired as to whether George Frank's appeal had been taken from a final judgment because the trial court's ruling had not disposed of all of the counts in the operative complaint brought against him. *Meribear Productions Inc.* v. *Frank*, supra, 328 Conn. 715. Thereafter, the parties submitted supplemental briefs addressing whether there was a final judgment as to George Frank. Id. All parties posited that a final judgment existed as to George Frank. Id., 715–16.

Our Supreme Court concluded to the contrary, however, indicating that "the trial court's failure to dispose of either the contract count or the quantum meruit count as to George Frank resulted in the lack of a final judgment." Id., 716. On the basis of the lack of a final judgment as to George Frank, our Supreme Court apparently concluded that it did not have jurisdiction over the entire appeal, including with respect to Joan Frank, and, therefore, it remanded the case to this court with direction to dismiss the appeal. Id.

In a footnote, our Supreme Court explained its conclusion that it was proper to dismiss the entire appeal, even though it had concluded "that the judgment as to Joan Frank was final" and, therefore, a final judgment was lacking only as to one of the two defendants. Id., 716–17 n.4, 724. Specifically, the court stated: "In the defendants' supplemental brief on this issue, there was no request for this court to consider Joan Frank's appeal separately should we conclude that the judgment is not final as to George Frank. Nor did they contend that the issues as to each defendant overlapped to such an extent that we should consider both. This court has recognized that, [i]n some circumstances, the factual and legal issues raised by a legal argument, the appealability of which is doubtful, may be so inextricably intertwined with another argument, the appealability of which is established, that we should assume jurisdiction over both. . . . However, that circumstance is not applicable in the present case. We have previously relied on this exception when there is a final judgment as to all of the parties before the reviewing court, and the question is whether we can also consider an interlocutory ruling affecting those parties properly before us. . . . In the present case, the judgment is final as to Joan Frank only. In addition, we have invoked this exception when resolution of the interlocutory ruling would control or bear on the resolution of the final judgment or the case generally. . . . In the present case, our resolution of George Frank's jurisdictional challenge to the California judgment could have no bearing on Joan Frank's challenge to the judgment against her for breach of contract or on any potential liability under quantum meruit. Nor would it be dispositive of the challenge to the damages awarded." (Citations omitted; internal quotation marks omitted.) Id.,

716–17 n.4.[1]

Following our directed dismissal of the appeal on remand, the plaintiff filed in the trial court a withdrawal of the contract count and the quantum meruit count against George Frank, thereby rendering a final judgment as to him. On February 15, 2019, the defendants filed the present joint appeal.

On February 22, 2019, the plaintiff filed a motion to dismiss the appeal as to both defendants claiming that the appeal was untimely. The plaintiff argued that "this court lacks the jurisdiction to entertain the appeal by virtue of the fact that this is a joint appeal . . . wherein the final judgment from which Joan Frank appeals was rendered on October 14, 2014." On March 4, 2019, the defendants filed a memorandum in opposition to the plaintiff's February 22, 2019 motion to dismiss, arguing that the appeal was timely. The defendants further argued that even if the appeal was untimely, this court has the power to allow it to continue.

Thereafter, on March 8, 2019, the defendants filed a motion to file a late appeal. In this motion, the defendants argued that they should be permitted to file a late appeal because the "[p]laintiff could not be prejudiced by permitting a late appeal and [the] defendants will suffer a loss of their appellate rights if the appeal is not allowed." On March 13, 2019, the plaintiff filed an objection to the defendants' March 8, 2019 motion for permission to file a late appeal. On June 26, 2019, this court granted nunc pro tunc the defendants' March 8, 2019 motion to file a late appeal, and denied the plaintiff's February 22, 2019 motion to dismiss the appeal, indicating that this opinion would follow.

At the outset, we note that, contrary to the plaintiff's argument that this court should dismiss the defendants' appeal because its untimeliness constituted a jurisdictional defect, the twenty day time limit for filing an appeal as articulated in Practice Book § 63-1 (a)[2] is not subject matter jurisdictional. *Alliance Partners, Inc.* v. *Volatarc Technologies, Inc.*, 263 Conn. 204, 209, 820 A.3d 224 (2003). Thus, this court may, in its discretion, allow a party to file an untimely appeal. *Parlato* v. *Parlato*, 134 Conn. App. 848, 850 n.1, 41 A.3d 327 (2012). This principle is articulated in Practice Book § 60-2, which provides in relevant part: "[The court] may . . . on its own motion or upon motion of any party . . . order that a party for good cause shown may file a late appeal . . . ." The burden to establish "good cause" for failing to file a timely appeal falls on the party seeking permission to file a late appeal. *Alliance Partners, Inc.* v. *Volatarc Technologies, Inc.*, supra, 263 Conn. 211.

"[If] a motion to dismiss that raises untimeliness is, itself, timely filed pursuant to Practice Book § 4056 [now § 66-8], it is ordinarily our practice to dismiss the

appeal if it is in fact late, and if no reason readily appears on the record to warrant an exception to our general rule. This practice is based in part on the fact that if the untimely appeal is entertained, a delinquent appellant would obtain the benefit of the appellate process after contributing to its delay, to the detriment of others with appeals pending who have complied with the rules and have a right to have their appeals determined expeditiously. Appellees are given the right under our rules to object to the filing of a late appeal and should be given the benefit of that rule, barring unusual circumstances or unless they waive the benefit of that rule. . . . We ordinarily dismiss late appeals that are the subject of timely motions to dismiss, knowing also that our discretion can be tempered by Practice Book § 4183 (6) [now § 60-2 (6)], which provides for the filing of late appeals for good cause shown. . . .

"We acknowledge that we eschew a mechanistic interpretation of our appellate rules in recognition of the fact that an unyielding policy requiring strict adherence to an appellate time limitation—no matter how severe or unfair the consequences—does not serve the interests of justice." (Citations omitted; internal quotation marks omitted.) *Alliance Partners*, *Inc.* v. *Volatarc Technologies*, *Inc.*, supra, 263 Conn. 213–14.

Although we are cognizant that the general rule against hearing untimely appeals is necessary for the reasons explained in *Alliance Partners*, *Inc.*, we conclude that, in the present case, good cause exists that warrants allowing the defendants' late appeal to proceed. The policy considerations that ordinarily weigh against granting untimely appeals either are not present here, or are overborne by competing considerations. For example, the defendants do not ask us to allow them to obtain the benefit of appellate review after contributing to its delay. To the contrary, on December 18, 2014, the defendants diligently filed their first appeal, which they and the plaintiff believed was taken from a final judgment as to both of them. Thus, the defendants did not strategically employ delay tactics for their own benefit. Moreover, allowing the defendants to file a late appeal will not prejudice the plaintiff, which argued that the prior judgment was final as to both defendants when the first appeal was before our Supreme Court and which was ready to litigate the merits of the appeal at that time. The plaintiff has not proffered any reason why circumstances have changed in the intervening period that would render unfair the adjudication of the defendants' appellate claims now. Finally, if we were to decline to allow the appeal to go forward, the defendants would be prejudiced in that they would be unduly deprived of their appellate rights.

In considering the defendants' motion for permission to file a late appeal, we also acknowledge that the timing of the filing of the present appeal had far less to do

with the defendants' diligence in litigating their claims than with the natural consequence of our Supreme Court's dismissal of the defendants' first appeal in its entirety. If our Supreme Court had elected to dismiss the prior joint appeal only as to George Frank and allowed the appeal to proceed with respect to Joan Frank, whom they concluded had appealed from a final judgment, the current claim regarding the timeliness of the present appeal would not have arisen.[3]

Although a final judgment has now entered as to all parties, the plaintiff is now asserting that, because the present appeal is untimely as to Joan Frank, the joint appeal must be treated as a whole and dismissed, just as the previous appeal was dismissed by our Supreme Court. That is, in our view, simply an unreasonable result, and it is primarily for that reason that we conclude that there is good cause to permit the present appeal to proceed.

The defendants' motion to file a late appeal is granted nunc pro tunc, and the plaintiff's motion to dismiss the appeal as untimely is denied.

In this opinion the other judges concurred.

[1] On October 2, 2018, the plaintiff filed a motion for attorney's fees and a motion for postjudgment interest with the trial court. Following argument on the motions, the parties stipulated, and the trial court confirmed, that an award of attorney's fees in the amount of $66,410 would enter. The court further granted the plaintiff an award of postjudgment interest at the rate of 5 percent per annum. The trial court's actions on these motions did not affect the finality of the judgment at issue here.

[2] Practice Book § 63-1 (a) provides in relevant part: "Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given . . . ."

[3] Practice Book § 61-3 provides in relevant part: "A judgment disposing of only a part of a complaint . . . is a final judgment if that judgment disposes of all causes of action in that complaint . . . brought by or against a particular party or parties. . . .

"The appeal from such judgment *may* be deferred . . . until the final judgment that disposes of the case for all purposes and as to all parties is rendered . . . ." (Emphasis added.) This provision, in providing that appeals may be taken separately, appears to support the principle that the finality of judgments generally is to be assessed with regard to each individual party. Our Supreme Court did not discuss Practice Book § 61-3 or explain why it was inapplicable relative to the procedural facts before it.