335 Conn. 669     NOVEMBER, 2020      669

Georges *v.* OB-GYN Services, P.C.

JENNIYAH GEORGES ET AL. *v.* OB-GYN
SERVICES, P.C., ET AL.
(SC 20170)

Palmer, McDonald, D'Auria, Mullins, Kahn, Ecker, Js.*

*Syllabus*

The plaintiffs, L and L's minor daughter, G, sought damages for personal
   injuries that G had sustained allegedly as a result of the defendants'
   medical malpractice. Prior to trial, the plaintiffs filed an offer of compro-
   mise for $2 million, which the defendants did not accept. On October
   28, 2016, the trial court accepted the jury verdict awarding the plaintiffs
   $4.2 million against both of the defendants. Subsequently, the plaintiffs
   filed a motion for statutory (§ 52-192a (c)) offer of compromise interest
   and for statutory (§ 37-3b) postjudgment interest. On November 28, 2016,
   evidently as a result of a clerical error, an entry was placed on the case
   docket, stating "judgment on verdict for plaintiff." On December 12,
   2016, the court awarded the plaintiffs both offer of compromise and
   postjudgment interest. On December 16, 2016, the defendants filed an
   appeal with the Appellate Court, challenging both the jury verdict and
   the trial court's awards of offer of compromise and postjudgment inter-
   est. The plaintiffs filed a timely motion to dismiss the appeal, claiming
   that the defendants had failed to file the appeal within twenty days of
   the date that judgment was rendered, as required by the rule of practice
   (§ 63-1 (a)) governing the time to appeal. The defendants filed an objec-
   tion to that motion, claiming that their appeal from the judgment ren-
   dered in accordance with the jury verdict was timely because they filed
   it within twenty days of the trial court's December 12, 2016 awards of
   offer of compromise and postjudgment interest. The defendants also
   filed a motion to suspend the rules of practice to permit the filing of a
   late appeal pursuant to the applicable rules of practice (§§ 60-2 (5) and
   60-3), claiming, in the alternative, that there was good cause to permit
   the late appeal in light of the confusion in the trial court concerning
   the date the judgment was rendered. The Appellate Court dismissed as
   untimely that portion of the defendants' appeal challenging the jury
   verdict and, in doing so, denied the defendants' motion to suspend the
   rules of practice to permit a late appeal. The Appellate Court also
   upheld the trial court's awards of offer of compromise and postjudgment
   interest. On the granting of certification, the defendants appealed to
   this court. *Held*:
1. The Appellate Court properly dismissed as untimely the portion of the
   defendants' appeal challenging the jury verdict, there having been no
   merit to the defendants' claim that, although they did not file their appeal

   * The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Georges *v.* OB-GYN Services, P.C.

within twenty days of the date on which the judgment was rendered in accordance with the jury verdict, and did not file a request for an extension of time or a postverdict motion, their appeal was nonetheless timely because the appeal period should have been measured from the date of the trial court's awards of offer of compromise and postjudgment interest, rather than the date the trial court accepted the jury verdict:

a. The defendants could not prevail on their claim that the judgment did not become final for purposes of appeal when the trial court accepted the jury verdict insofar as the court had yet to determine whether, or how much, offer of compromise interest should be awarded under § 52-192a, as a determination of the amount of offer of compromise interest is not an essential prerequisite to an appealable final judgment on the merits, because, although the presence of an unresolved claim for relief can delay the finality of a judgment on the merits, offer of compromise interest is not part of the plaintiffs' compensation for the alleged wrongdoing or unlawful conduct that gave rise to the underlying action, and, thus, a decision regarding offer of compromise interest does not require an assessment of the merits of the underlying case; moreover, under § 52-192a (c), trial courts have no discretion to determine if, or how much, offer of compromise interest should be awarded, as that statute requires that such interest be awarded when the amount of the verdict is equal to or exceeds the offer of compromise and prescribes the precise formula for calculating it.

b. The defendants could not prevail on their claim that, under Practice Book § 63-1 (c) (1), which provides for the tolling of the twenty day appeal period when a motion filed within the original twenty day appeal period seeks an alteration to the terms of the judgment, the plaintiffs' motion for offer of compromise and postjudgment interest created a new twenty day period within which the defendants could appeal from the judgment rendered in accordance with the jury verdict: the awards of offer of compromise and postjudgment interest, although increasing the plaintiffs' overall recovery, did not alter the amount of compensatory damages the jury previously had awarded, and, accordingly, the plaintiffs' motion for such interest did not seek an alteration of the judgment within the meaning of Practice Book § 63-1 (c) (1); moreover, federal precedent interpreting an analogous federal rule of appellate procedure (Fed. R. App. Proc. 4 (a) (4)) supported the view that postverdict motions for statutory interest do not seek an alteration to the underlying judgment.

2. The Appellate Court did not abuse its discretion in denying the defendants' motion to suspend the rules of practice to permit a late appeal, as the defendants failed to establish good cause: despite the defendants' claim that there was widespread confusion in the trial court about the date the judgment was rendered, there was no reasonable basis for any such confusion, as the rules of practice (§§ 17-2 and 63-1 (b)) directing trial courts to render judgments on jury verdicts and providing that the appeal

Georges *v.* OB-GYN Services, P.C.

period begins to run when the verdict is accepted, plainly should have put the defendants' counsel on notice that, when the trial court accepted the verdict on October 28, 2016, and no subsequent motions were filed under the rules of practice (§§ 16-35 and 17-2A) governing certain post-verdict motions, a final judgment had been rendered and the twenty day appeal period had begun to run, and the erroneous entry placed on the case docket suggesting that the judgment had been rendered for the plaintiffs on November 28, 2016, was of no moment because the twenty day appeal period had expired eleven days before that entry appeared on the docket; moreover, the Appellate Court reasonably concluded that the defendants had failed to show good cause on the basis of their claimed good faith belief that there was no appealable final judgment until the trial court issued its decision awarding interest on December 12, 2016, as established final judgment principles should have put the defendants' counsel on notice that offer of compromise interest is not a type of relief that delays finality, and nothing in the text of Practice Book § 63-1 (c) (1), or Connecticut case law interpreting it, remotely suggested that a postjudgment motion for mandatory interest, such as the plaintiffs' motion in the present case, alters any aspect of the underlying judgment; furthermore, contrary to the defendants' claim, the size of the verdict did not render the Appellate Court's refusal to hear the appeal challenging the jury verdict an abuse of discretion, particularly in light of the wholly inadequate explanations proffered by the defendants for why they failed to appeal until approximately one month after the deadline, and, although the gravity of the consequences of a dismissal to the appealing party is not wholly irrelevant to a good cause analysis, under the circumstances of the present case, the size of the verdict, in and of itself, did not compel the conclusion that the Appellate Court abused its discretion.

(*Two justices concurring in part and dissenting in part in one opinion*)

Argued October 23, 2019—officially released June 3, 2020**

*Procedural History*

Action to recover damages for, inter alia, medical malpractice, and for other relief, brought to the Superior Court in the judicial district of New London, where the plaintiff Jean Georges withdrew from the action; thereafter, the case was tried to the jury before *Vacchelli, J.*; verdict and judgment for the named plaintiff and in part for the plaintiff Marie Leoma; subsequently, the court granted

** June 3, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Georges *v.* OB-GYN Services, P.C.

the motion of the named plaintiff et al. for offer of com-
promise and postjudgment interest, and the defendants
appealed to the Appellate Court, which granted in part
the motion of the named plaintiff et al. to dismiss the
appeal and denied the defendants' motion to suspend
the rules of practice to permit a late appeal; thereafter,
this court dismissed the defendants' petition for certifi-
cation to appeal; subsequently, the Appellate Court, *Keller*,
*Prescott* and *Bright*, *Js.*, affirmed the judgment of the
trial court as to offer of compromise and postjudgment
interest, and the defendants, on the granting of certifica-
tion, appealed to this court. *Affirmed.*

*David J. Robertson*, with whom, on the brief, was
*Malaina J. Sylvestre*, for the appellants (defendants).

*Alinor C. Sterling*, with whom were *James D. Hor-
witz* and, on the brief, *Cynthia C. Bott*, for the appellees
(named plaintiff et al.).

*Jeffrey R. Babbin* and *Christopher P. Kriesen* filed
a brief for the Connecticut Defense Lawyers Associa-
tion as amicus curiae.

*Opinion*

MULLINS, J. The defendants, OB-GYN Services, P.C.,
and Brenda Gilmore, appealed from the judgment of
the trial court rendered following a jury verdict in favor
of the plaintiff Marie Leoma and the named plaintiff,
Jenniyah Georges, Leoma's minor daughter, on certain
medical malpractice claims.[1] The Appellate Court, how-

---

[1] Although the complaint refers to Jenniyah Georges as the named plaintiff,
it is clear that the only proper, remaining plaintiff is Leoma, who, together
with Jean Georges, brought this action as the next friend of Jenniyah
Georges. See *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App.
583, 585 n.1, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49
A.3d 951 (2012); see also *Mendillo* v. *Board of Education*, 246 Conn. 456,
460 n.3, 717 A.2d 1177 (1998) (recognizing general rule that minor children
may bring action only by way of parent or next friend), overruled in part
on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015).
Leoma also brought claims against the defendants in her individual capacity,
seeking damages for emotional distress. The jury returned a verdict for the

335 Conn. 669 NOVEMBER, 2020 673

Georges *v.* OB-GYN Services, P.C.

ever, granted in part the plaintiffs' motion to dismiss the appeal as untimely and denied the defendants' motion to suspend the rules of practice to permit a late appeal. On appeal to this court, the defendants claim that the Appellate Court (1) improperly granted the plaintiffs' motion to dismiss the portion of the appeal challenging the jury's verdict as untimely, and (2) abused its discretion in denying their motion to suspend the rules of practice to permit a late appeal. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history. The plaintiffs filed their original complaint on December 12, 2011. In that complaint, the plaintiffs alleged that the defendants committed malpractice during Leoma's pregnancy and labor, and during the delivery of Jenniyah Georges, causing Jenniyah Georges to sustain severe, permanent injuries. On May 16, 2013, the plaintiffs filed an offer of compromise directed to both defendants, offering to settle the claim for $2 million. The defendants did not accept the offer of compromise, which resulted in it being deemed rejected thirty days later by operation of law.[2] A jury trial ensued.

On October 28, 2016, the jury returned a verdict for the plaintiffs of $4.2 million as against both defendants. The trial court accepted the verdict that same day. The defendants did not file any postjudgment motions challenging the jury's verdict.

On November 8, 2016, the plaintiffs filed a motion seeking offer of compromise interest. The plaintiffs argued that they were entitled to such interest pursuant

defendants with respect to these claims, which are not at issue in this appeal. Jean Georges, Jenniyah Georges' father, also was originally named as a plaintiff in both his representative and individual capacities but subsequently withdrew from this action. We refer to Leoma and Jenniyah Georges individually by name and collectively as the plaintiffs.

[2] See General Statutes § 52-192a (a); Practice Book § 17-16.

Georges *v.* OB-GYN Services, P.C.

to General Statutes § 52-192a (c)[3] and Practice Book § 17-18 because the defendants failed to accept the plaintiffs' offer of compromise for $2 million and the jury's verdict of $4.2 million exceeded that amount. The plaintiffs' motion also sought postjudgment interest under General Statutes § 37-3b.[4] The defendants filed an objection to the plaintiffs' motion. On November 28, 2016, evidently as a result of a clerical error, an entry was placed on the electronic docket, stating "judgment on verdict for plaintiff."

On December 12, 2016, the trial court issued a memorandum of decision, awarding the plaintiffs both offer of compromise and postjudgment interest. With respect to offer of compromise interest, the court concluded that the "end date" for calculating the interest was the date the judgment was rendered and clarified that the judgment was rendered on October 28, 2016—the date the verdict was accepted by the court—not November 28, 2016. The court clarified that the docket entry made on November 28, 2016, which referenced November 28, 2016, as the date of the judgment, had been made in error. The court awarded the plaintiffs $1,639,496.55 in offer of compromise interest. The trial court also

---

[3] General Statutes § 52-192a (c) provides in relevant part: "After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action . . . was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint . . . ." See Practice Book § 17-18 (providing for identical computation method).

[4] General Statutes § 37-3b provides in relevant part: "(a) For a cause of action arising on or after May 27, 1997, interest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, upon the amount of the judgment. . . ."

Georges *v.* OB-GYN Services, P.C.

awarded the plaintiffs postjudgment interest under § 37-3b, to be calculated at 10 percent per year, commencing on November 17, 2016, twenty days from the date of the judgment, "subject to tolling as permitted by statute."

On December 16, 2016, the defendants filed an appeal with the Appellate Court, challenging both the jury's verdict and the trial court's awards of offer of compromise and postjudgment interest.[5] The plaintiffs filed a timely motion to dismiss the appeal or, in the alternative, to dismiss the portion of the appeal challenging the jury's verdict. They claimed that the defendants failed to file the appeal within twenty days of the date the judgment was rendered, as required by Practice Book § 63-1 (a). The defendants filed an objection to that motion, arguing that their appeal from the judgment rendered in accordance with the jury's verdict was timely because they filed it within twenty days of the trial court's December 12, 2016 memorandum of decision awarding the offer of compromise and postjudgment interest. The defendants also filed a motion to suspend the rules of practice to permit a late appeal pursuant to Practice Book §§ 60-2 (5)[6] and 60-3,[7] arguing,

_____

[5] As to the jury verdict, the defendants claimed that the court had improperly admitted certain expert testimony and provided the jury with an incorrect instruction on damages.

[6] Practice Book § 60-2 provides in relevant part: "[The court] may . . . upon motion of any party . . . (5) order that a party for good cause shown may file a late appeal . . . unless the court lacks jurisdiction to allow the late filing . . . ." Although § 60-2 was amended in October, 2017, to take effect in January, 2018, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of § 60-2.

[7] Practice Book § 60-3 provides: "In the interest of expediting decision, or for other good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules on motion of a party or on its own motion and may order proceedings in accordance with its direction." Although § 60-3 was amended in October, 2017, to take effect in January, 2018, that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of § 60-3.

Georges *v.* OB-GYN Services, P.C.

in the alternative, that there was "good cause" to permit the late appeal in light of the "significant amount of confusion in the trial court" concerning the date the judgment was rendered. This motion largely focused on the erroneous docket entry of November 28, 2016, listing that date as the date of the judgment.

The Appellate Court granted in part the plaintiffs' motion to dismiss and denied the defendants' motion to suspend the rules of practice to permit a late appeal. This certified appeal followed.[8]

I

The defendants claim that the Appellate Court improperly granted the plaintiffs' motion to dismiss the portion of the defendants' appeal challenging the jury's verdict because the appeal was timely. We disagree.

We review the Appellate Court's decision to dismiss an untimely appeal for abuse of discretion; see, e.g., *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 53, 59, 61, 727 A.2d 213 (1999); cf. *Kelley* v. *Bonney*, 221 Conn. 549, 559 and n.4, 606 A.2d 693 (1992) (noting that Appellate Court has broad discretion to determine whether to hear late appeal); but questions concerning whether the judgment was final for purposes of appeal, or when the twenty day appeal period began to run, are questions of law over which our review is plenary. See, e.g., *Hylton* v. *Gunter*, 313 Conn. 472, 478, 97 A.3d 970 (2014); *In re Haley B.*, 262 Conn. 406, 410–11, 815 A.2d 113 (2003).

"Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date

---

[8] We granted the defendants' petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly dismiss that portion of the defendants' appeal relating to the judgment rendered on October 28, 2016?" And (2) "[d]id the Appellate Court abuse its discretion when it denied the defendants' motion to [suspend the rules of practice to permit] a late appeal?" *Georges* v. *OB-GYN Services*, *P.C.*, 330 Conn. 905, 192 A.3d 426 (2018).

Georges *v.* OB-GYN Services, P.C.

notice of the judgment or decision is given.'' Practice Book § 63-1 (a). ''In civil jury cases, the appeal period shall begin when the verdict is accepted.'' Practice Book § 63-1 (b). Likewise, with respect to the date the judgment is deemed to have been rendered in such cases, Practice Book § 17-2 provides in relevant part: ''If no motions under Sections 16-35 or [17-2A] are filed, upon the expiration of the time provided for the filing of such motions, judgment on the verdict shall be rendered in accordance with the verdict, and *the date of the judgment shall be the date the verdict was accepted. . . .''* (Emphasis added.)

In the present case, the trial court accepted the jury's verdict on October 28, 2016, which meant that, in the absence of an extension of time or the filing of a postverdict motion by the defendants, the defendants had until November 17, 2016, to appeal from the judgment rendered in accordance with that verdict. The defendants did not file any posttrial motions under Practice Book § 16-35 or Practice Book § 17-2A; nor did they request an extension of the appeal period. The defendants did not file their appeal until December 16, 2016, approximately one month after the deadline. The defendants contend, however, that their appeal was nonetheless timely because they filed it within twenty days of the court's December 12, 2016 decision awarding offer of compromise and postjudgment interest. The defendants argue that the appeal period should be measured from the date of this subsequent decision, rather than the date the verdict was accepted, because (1) there was no appealable final judgment until the court awarded offer of compromise and postjudgment interest, and (2) the plaintiffs' November 8, 2016 motion for interest created a new twenty day appeal period pursuant to Practice Book § 63-1 (c) (1).

We address these questions of law in turn.

Georges *v.* OB-GYN Services, P.C.

A

The first question is whether the date of the final judgment for purposes of appeal is October 28, 2016, the date the trial court accepted the jury's verdict. It is well settled that "the acceptance of the jury verdict at the time it is [returned] is deemed to constitute a final judgment . . . unless a motion to set aside is later filed." (Citations omitted; internal quotation marks omitted.) *Kolich* v. *Shugrue*, 198 Conn. 322, 327, 502 A.2d 918 (1986); see also Practice Book § 17-2. The defendants argue, however, that, in the present case, the judgment did not become final for purposes of appeal when the verdict was accepted because the trial court had yet to determine whether, or how much, offer of compromise interest should be awarded under § 52-192a.

This court has held that the presence of an unresolved claim for relief can delay the finality of a judgment on the merits. This, however, is the exception to the usual rule and generally applies only if the form of relief being sought "seek[s] compensation for the alleged[ly] wrongful conduct of the defendants, which depend[s] upon an assessment of the underlying merits of the transaction between the parties." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 294 Conn. 280, 297, 984 A.2d 658 (2009); see, e.g., *Balf Co.* v. *Spera Construction Co.*, 222 Conn. 211, 215, 608 A.2d 682 (1992) (claim for discretionary prejudgment interest postponed finality of judgment because "[t]he plaintiff's right to such a recovery is part of its claim to be made whole," and "[w]hether it succeeds will depend upon an assessment of the underlying merits");[9] see also *Stroiney* v. *Cres-*

---

[9] In concluding in *Balf Co.* that claims for discretionary prejudgment interest can postpone the rendering of an appealable final judgment, this court distinguished between claims for that type of relief and claims for attorney's fees, which this court had previously held in *Paranteau* v. *DeVita*, 208 Conn. 515, 522–23, 544 A.2d 634 (1988), do not affect finality. See *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15; see also footnote 10 of this opinion. Adopting the United States Supreme Court's reasoning in *Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 175–77, 109 S. Ct. 987, 103

Georges *v.* OB-GYN Services, P.C.

*cent Lake Tax District*, 197 Conn. 82, 84, 495 A.2d 1063
(1985) (judgment "rendered only [on] the issue of liabil-
ity without an award of damages" is interlocutory).

Conversely, when the postverdict relief is not designed
to compensate the plaintiffs for the underlying wrong-
doing and does not require the trial court to examine
the merits of the underlying case, it is collateral to the
judgment and does not affect its finality for purposes
of appeal. See, e.g., *Hylton* v. *Gunter*, supra, 313 Conn.
485 n.12 (noting that award of attorney's fees and liti-
gation costs as part of common-law punitive damages
claim would not affect finality of judgment because
their "calculation . . . derives from evidence that is
collateral to that considered in the main cause of
action"); *Paranteau* v. *DeVita*, 208 Conn. 515, 522–23,
544 A.2d 634 (1988) (adopting "bright-line rule" that "a
judgment on the merits is final for purposes of appeal
even though the recoverability or amount of attorney's
fees for the litigation remains to be determined").[10]

L. Ed. 2d 146 (1989), this court observed: "First, unlike attorney's fees, which
at common law were regarded as an element of costs and therefore not
part of the merits judgment . . . prejudgment interest traditionally has been
considered part of the compensation due [the] plaintiff. Second, unlike a
request for attorney's fees or a motion for costs, a motion for discretionary
prejudgment interest does not rais[e] issues wholly collateral to the judgment
in the main cause of action . . . nor does it require an inquiry wholly
separate from the decision on the merits . . . . In deciding if and how
much prejudgment interest should be granted, a [trial] court must examine—
or in the case of a postjudgment motion, reexamine—matters encompassed
within the merits of the underlying action. . . . Third, the conclusion that
a postjudgment motion for discretionary prejudgment interest postpones
the finality of a judgment on the merits helps further the important goal
of avoiding piecemeal appellate review of judgments." (Citation omitted;
internal quotation marks omitted.) *Balf Co.* v. *Spera Construction Co.*,
supra, 214–15.

[10] Under the bright-line rule of *Paranteau*, requests for attorney's fees
categorically "will be treated separately" from decisions on the merits
regardless of whether the "particular . . . claim for attorney's fees was
collateral to, or an integral part of, the judgment on the merits." *Paranteau*
v. *DeVita*, supra, 208 Conn. 522–23; see also *Hylton* v. *Gunter*, supra, 313
Conn. 483–84; *Benvenuto* v. *Mahajan*, 245 Conn. 495, 498–500, 715 A.2d 743
(1998). But see *Hylton* v. *Gunter*, supra, 485 n.13 (noting that "attorney's

Georges *v.* OB-GYN Services, P.C.

Offer of compromise interest plainly falls into the latter category because it does not entail any examination of matters encompassed within the merits of the underlying action. Although offer of compromise interest increases a plaintiff's overall recovery, offer of compromise interest is not part of the plaintiff's compensation *for the alleged wrongdoing or unlawful conduct that gave rise to the underlying action.* See *Paine Webber Jackson & Curtis, Inc.* v. *Winters*, 22 Conn. App. 640, 652–54, 579 A.2d 545 (explaining that, unlike discretionary prejudgment interest, which "constitutes an element of the damages awarded," offer of compromise interest is "unrelated to the underlying [damages claim]"), cert. denied, 216 Conn. 820, 581 A.2d 1055 (1990). Rather, "interest awarded under § 52-192a is *solely* related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources." (Emphasis added; internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, 239 Conn. 708, 742, 687 A.2d 506 (1997). In other words, an award of offer of compromise interest is punitive, rather than compensatory, in nature. Id., 752; see also *Accettullo* v. *Worcester Ins. Co.*, 256 Conn. 667, 673, 775 A.2d 943 (2001).

Accordingly, a decision regarding offer of compromise interest does not require an assessment of the merits of the underlying case. Under § 52-192a (c), trial courts have no discretion to determine if, or how much, offer of compromise interest should be awarded. The statute *requires* the interest to be awarded if the amount of the verdict is equal to or exceeds the offer of compromise and prescribes the precise formula for calculating it. See footnote 3 of this opinion. "[A]n award of interest

fees that themselves form the basis of a plaintiff's claim for compensatory damages, such as those occasioned by an insurer's breach of its duty to defend, are conceptually different and must be established in order to have an appealable final judgment").

Georges *v.* OB-GYN Services, P.C.

under § 52-192a is mandatory, and the application of § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts.'' (Emphasis omitted; internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, supra, 239 Conn. 752.

We therefore conclude that a determination of the amount of offer of compromise interest to be awarded is not an essential prerequisite to an appealable final judgment on the merits. See *Earlington* v. *Anastasi*, 293 Conn. 194, 196–97 n.3, 976 A.2d 689 (2009) (noting that judgment was final despite failure to award offer of compromise interest ''[b]ecause a decision to award such interest pursuant to . . . § 52-192a is severable from the proceedings on the merits and does not require the exercise of discretion''). In the present case, the judgment became final on October 28, 2016, when the court accepted the jury verdict. See Practice Book § 17-2; Practice Book § 63-1 (b). The court's subsequent decision on December 12, 2016, awarding offer of compromise interest, ''raise[d] a collateral and independent claim that is separately appealable as a final judgment.'' *Paranteau* v. *DeVita*, supra, 208 Conn. 523; see id. (determining whether supplemental postjudgment order regarding amount of attorney's fees may raise claim that is separately appealable as final judgment).

B

The defendants next argue that, under Practice Book § 63-1 (c) (1), the plaintiffs' November 8, 2016 motion for offer of compromise interest and for postjudgment interest under § 37-3b created a new twenty day period within which the defendants could appeal from the judgment rendered in accordance with the jury's verdict. They contend that this new appeal period began to run when the court decided that motion on December 12, 2016. We are not persuaded.

Georges *v.* OB-GYN Services, P.C.

Under Practice Book § 63-1 (c) (1), "[i]f a motion is filed within the appeal period that, if granted, *would render the judgment, decision or acceptance of the verdict ineffective* . . . a new twenty day period . . . for filing the appeal shall begin on the day that notice of the ruling is given on the last such outstanding motion . . . ." (Emphasis added.) That subdivision explains that the motions that meet these criteria include, inter alia, "motions that seek . . . any alteration of the terms of the judgment."[11] In determining whether a motion seeks an "alteration" of the terms of the judgment, "we look to the substance of the relief sought by the motion rather than the form." *In re Haley B.*, supra, 262 Conn. 413.

The defendants contend that the plaintiffs' motion for offer of compromise and postjudgment interest altered the terms of the judgment under Practice Book § 63-1 (c) (1) because it "change[d] the judgment from the initial amount of the verdict [$4.2 million], to the amount of the verdict plus offer of compromise interest." We disagree.

The defendants rely on *In re Haley B.*, supra, 262 Conn. 406, which considered the application of Practice Book § 63-1 (c) (1) in a custody dispute. Id., 407, 412. In that case, the trial court denied the intervening respondent's motion for custody or guardianship over her grandchild but ordered weekly visitation with the

---

[11] Practice Book § 63-1 (c) (1) provides in relevant part: "Motions that, if granted, would render a judgment, decision or acceptance of the verdict ineffective include, but are not limited to, motions that seek: the opening or setting aside of the judgment; a new trial; the setting aside of the verdict; judgment notwithstanding the verdict; reargument of the judgment or decision; collateral source reduction; additur; remittitur; *or any alteration of the terms of the judgment.*

"Motions that do not give rise to a new appeal period include those that seek: clarification or articulation, as opposed to alteration, of the terms of the judgment or decision; a written or transcribed statement of the trial court's decision; or reargument of a motion listed in the previous paragraph. . . ." (Emphasis added.)

grandchild. Id., 407–409. Subsequently, in response to an oral motion raised by the Department of Children and Families (department), the court reduced the amount of visitation it had previously awarded to the intervening respondent to once per month. Id., 409–10. This court concluded that the department's motion had sought a modification or alteration of the trial court's original order, thereby triggering a new appeal period under § 63-1 (c) (1), because the motion resulted in the court's "chang[-ing]" its prior order of weekly visitation by reducing it to monthly visitation. Id., 414. Therefore, "a portion of the court's original decision, namely, that part requiring weekly visitation, was rendered *ineffective* by the subsequent order of the court reducing visitation to a monthly basis." (Emphasis in original.) Id.

*In re Haley B.* is not controlling here. That case involved the trial court's altering a substantive term of its prior judgment. In the present case, the awards of statutory interest—although increasing the plaintiffs' overall recovery—did not alter the amount of compensatory damages the jury previously had awarded. As to whether the addition of these interest awards to the existing judgment creates a new appeal period under Practice Book § 63-1 (c) (1), our research has not revealed any pertinent Connecticut appellate authority addressing the applicability of that rule in this particular context. We find persuasive, however, the reasoning of the United States Supreme Court in interpreting the analogous federal rule, set forth in rule 4 (a) (4) of the Federal Rules of Appellate Procedure. See *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 215 (adopting United States Supreme Court's reasoning in *Osterneck* v. *Ernst & Whinney*, 489 U.S. 169, 173–77, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989), to determine whether judgment was final, "even though the United States Supreme Court was applying [rule 59 (e) of] the Federal Rules of Civil Procedure" and rule 4 (a) (4) of Federal Rules

Georges *v.* OB-GYN Services, P.C.

of Appellate Procedure); cf. *Paranteau* v. *DeVita*, supra, 208 Conn. 522–23 (adopting United States Supreme Court's reasoning in determining whether judgment on merits was final for purposes of appeal even though that court applied federal law).

Similar to Practice Book § 63-1 (c) (1), which creates a new appeal period for, inter alia, motions seeking "any alteration of the terms of the judgment," rule 4 (a) (4) (A) (iv) of the Federal Rules of Appellate Procedure creates a new appeal period for motions that, pursuant to rule 59 (e) of the Federal Rules of Civil Procedure, "alter or amend a judgment . . . ." "[F]ederal courts generally have invoked [r]ule 59 (e) [of the Federal Rules of Civil Procedure] only to support reconsideration of matters properly encompassed in a decision on the merits." (Internal quotation marks omitted.) *Buchanan* v. *Stanships, Inc.*, 485 U.S. 265, 267, 108 S. Ct. 1130, 99 L. Ed. 2d 289 (1988). Thus, a postjudgment motion for costs did not purport to alter any aspect of the judgment; rather, it "sought only what was due *because of* the judgment. . . . Assessment of such costs does not involve reconsideration of any aspect of the decision on the merits." (Emphasis in original.) Id., 268. The United States Supreme Court explained that, although the outcome may have been different "if expenses of this sort were provided as an aspect of the underlying action," a motion for costs "raises issues wholly collateral to the judgment in the main cause of action, issues to which [r]ule 59 (e) [of the Federal Rules of Civil Procedure] was not intended to apply." Id., 268–69.

Following the rationale of the United States Supreme Court, we conclude that the plaintiffs' motion for offer of compromise and postjudgment interest did not seek an "alteration" of the judgment within the meaning of Practice Book § 63-1 (c) (1). As we explained in part I A of this opinion, a decision to award offer of compromise

Georges *v.* OB-GYN Services, P.C.

interest under § 52-192a is ministerial and does not require the trial court to reconsider any aspect of the decision on the merits.

The same is true of postjudgment interest under § 37-3b, which similarly leaves trial courts with no discretion in determining whether to award such interest. See, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 48, 74 A.3d 1212 (2013) (legislative history of § 37-3b "leaves no doubt that the legislature . . . convert[ed] § 37-3b from a statute that permitted an award of postjudgment interest in the discretion of the trial court into one that mandates such an award"); see also footnote 4 of this opinion. A claim for interest under § 37-3b also does not require, or permit, the trial court to reconsider the merits of the case because such interest is not an element of the plaintiff's damages in the underlying action. See *Hicks* v. *State*, 297 Conn. 798, 804, 1 A.3d 39 (2010) ("[I]nterest awarded pursuant to § 37-3b is in addition to and based upon the amount of damages as determined by the trier of fact. Postjudgment interest, therefore, cannot be an element of damages."). Indeed, because § 37-3b requires the interest to be calculated "upon the amount of the judgment," a claim for such interest cannot even be considered until after the plaintiff has recovered a judgment against the defendant. Accordingly, an award of interest under § 37-3b is collateral to, and does not alter for purposes of Practice Book § 63-1 (c) (1), the judgment on the merits. See *White* v. *New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451–52, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982) (motion for attorney's fees did not alter judgment under rule 59 (e) of Federal Rules of Civil Procedure because it "require[d] an inquiry . . . that cannot even commence until one party has 'prevailed' ").

We therefore conclude that the plaintiffs' postverdict motion for mandatory interest under §§ 52-192a and 37-

Georges *v.* OB-GYN Services, P.C.

3b did not seek an "alteration" of the judgment within the meaning of Practice Book § 63-1 (c) (1) and certainly did not render the judgment ineffective. Rather, the motion "sought only what was due *because of* the judgment." (Emphasis in original.) *Buchanan* v. *Stanships, Inc.*, supra, 485 U.S. 268. The twenty day appeal period began to run on October 28, 2016, when the court accepted the jury verdict; see Practice Book § 63-1 (b); and expired on November 17, 2016, approximately one month before the defendants filed their appeal from the judgment rendered in accordance with that verdict on December 16, 2016. Accordingly, the Appellate Court correctly concluded that the appeal was untimely.

II

The defendants claim that the Appellate Court abused its discretion in denying their motion to suspend the rules of practice to permit a late appeal. We disagree.

We begin with the principles governing our review. "The rules of practice vest broad authority in the Appellate Court for the management of its docket." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 210, 820 A.2d 224 (2003). Practice Book § 60-2 provides in relevant part that "[t]he supervision and control of the proceedings shall be in the court having appellate jurisdiction from the time the appellate matter is filed . . . . [The court] may . . . on its own motion or upon motion of any party . . . (5) order that a party for good cause shown may file a late appeal . . . unless the court lacks jurisdiction to allow the late filing . . . ." Practice Book § 60-3 further provides that, "[i]n the interest of expediting decision, or for other good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules on motion of a party or on its own motion and may order proceedings in accordance with its direction."

Georges *v.* OB-GYN Services, P.C.

"In the absence of jurisdictional barriers, appellate tribunals must exercise their discretion to determine whether a late appeal should be permitted to be heard. . . . Thus, we review the Appellate Court's decision [to deny a motion for permission to file a late appeal] under the abuse of discretion standard. In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 210. In the absence of evidence that the Appellate Court "decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors," its decision must be upheld. (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018).

Consistent with this court's prior cases, we emphasize at the outset that our review of the Appellate Court's decision is especially deferential in the present case in light of the Appellate Court's "broad authority to manage its docket. . . . In the exercise of that authority, [the Appellate Court] legitimately has adopted a policy of docket control that, in other than exceptional cases, the need to address cases that were filed timely outweighs the need to permit appeals that are in fact late." (Citation omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212; see also *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 61.

The Appellate Court has explained that, under this policy, it may "exercise its discretion to consider late appeals, even when a party timely files a motion to dismiss an untimely appeal. . . . Given the large number of appeals . . . filed in [the Appellate Court], however, [the court has] adopted a policy that gives precedence

Georges *v.* OB-GYN Services, P.C.

to those appeals that are timely filed . . . . Therefore, when a motion to dismiss that raises untimeliness is, itself, timely filed . . . it is ordinarily [the court's] practice to dismiss the appeal if it is in fact late, and if no reason readily appears on the record to warrant an exception to [the court's] general rule." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 481–82, 705 A.2d 566 (1998). The Appellate Court has numerous times "announced this policy, putting all litigants, including the [litigants in the present case], on fair notice thereof." *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212. This previously announced policy of dismissing untimely appeals in the absence of a readily apparent reason to hear the appeal generally weighs in favor of upholding the Appellate Court's decision to deny a request for permission to file a late appeal.[12] See id., 214.

In determining whether the Appellate Court abused its discretion in the present case, we examine the defen-

---

[12] The concurring and dissenting justice dilutes our deferential standard of review of the Appellate Court's ruling on a motion for permission to file a late appeal to the point of being virtually indistinguishable from plenary review. Specifically, according to the concurring and dissenting justice, if this court can discern on appeal an "objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or has been tolled," and "no other factors weigh against granting the motion," then the Appellate Court necessarily abused its discretion in failing to find good cause for the late appeal. Although objectively reasonable confusion about the operation of our appellate rules certainly is a factor to consider when reviewing the Appellate Court's decision to deny a motion for permission to file a late appeal, we disagree that this or any other factor is dispositive. Rather, abuse of discretion review mandates that we make "every reasonable presumption . . . in favor of the correctness of the [Appellate Court's] ruling." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 210. More to the point, as we explain subsequently in the body of this opinion, the Appellate Court was justified in concluding that the defendants' proffered explanations for their confusion about the date final judgment was rendered or when the appeal period began to run did not amount to good cause to excuse their untimely appeal.

Georges *v.* OB-GYN Services, P.C.

dants' motion to suspend the rules of practice to permit a late appeal in order to assess whether the defendants established the requisite "good cause" under Practice Book §§ 60-2 (5) and 60-3. See id., 209 n.9 ("[i]n reviewing the Appellate Court's [decision to deny a motion for permission to file a late appeal], we take into account the [appellant's] representations" in that motion).

In their motion, the defendants asserted, first, that there was "widespread confusion" in the trial court as to the date the judgment was actually rendered, for which they should not be penalized. In particular, they noted the docket entry that erroneously listed the date of the judgment as November 28, 2016. Second, the defendants argued that they had a "good faith belief" that there was no appealable final judgment until the court issued its decision awarding offer of compromise and postjudgment interest on December 12, 2016. Finally, the defendants emphasized that the substantial size of the jury's verdict, $4.2 million, counseled in favor of permitting their untimely appeal to proceed.

We find these justifications unconvincing. Despite the defendants' claim that there was "widespread confusion" in the trial court about the date the judgment was rendered, we see no reasonable basis for any such confusion. Practice Book § 17-2 expressly provides that, if no motions under Practice Book § 16-35 or Practice Book § 17-2A are filed, "the date of the judgment shall be the date the verdict was accepted." Further, Practice Book § 63-1 (b) provides that, "[i]n civil jury cases, the appeal period shall begin when the verdict is accepted." These provisions plainly should have put the defendants' counsel on notice that, when the trial court accepted the verdict on October 28, 2016, and no subsequent motions under Practice Book § 16-35 or Practice Book § 17-2A were filed, a final judgment had been rendered and the twenty day appeal period had began to run.

Georges *v.* OB-GYN Services, P.C.

In this regard, the erroneous entry placed on the docket suggesting that the judgment had been rendered in favor of the plaintiffs on November 28, 2016, is of no moment. The twenty day appeal period expired on November 17, 2016, eleven days *before* that erroneous entry appeared on the docket. We therefore fail to see how the erroneous entry could have been the cause of the defendants' failure to appeal on or before the November 17, 2016 deadline.

Nor did the Appellate Court act unreasonably when it concluded that the defendants had failed to show good cause on the basis of their claimed "good faith belief" that there was no appealable final judgment until the court issued its decision awarding interest on December 12, 2016. Again, Practice Book § 17-2 explicitly provides that "the date of the judgment shall be the date the verdict was accepted." Further, even if the defendants had harbored some uncertainty about the date final judgment was rendered, "[t]he filing requirements prescribed by [our rules of practice] cannot be abrogated . . . by a party's perception that appeal is unnecessary during the appropriate appeal period. The fact that the need for an appeal may not have been evident until after the mandated filing period passed is not a circumstance that impels us to bypass the requirements of our rules of practice." *Lucisano* v. *Lucisano*, 200 Conn. 202, 206, 510 A.2d 186 (1986). Moreover, the defendants have offered no reason why, if there was any doubt in their minds as to whether the judgment was final on October 28, 2016, they did not "take the obviously safer route"; *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212; and immediately appeal from the judgment rendered in accordance with the jury's verdict, which they later could have amended to include any claims challenging the court's subsequent interest awards.[13] See, e.g., *Ran-*

_____

[13] Contrary to the concurring and dissenting justice's suggestion, we are not advocating for an " 'appeal early and often' approach" to appellate

Georges *v.* OB-GYN Services, P.C.

*dazzo* v. *Sakon*, 181 Conn. App. 80, 87–88 n.7, 189 A.3d 616, cert. denied, 330 Conn. 909, 193 A.3d 560 (2018); see also Practice Book § 61-9.

The concurring and dissenting justice contends that the Appellate Court abused its discretion in denying the defendants' motion to suspend the rules of practice to permit a late appeal because "the barren state of the law" gave the defendants an objectively reasonable, good faith belief either (1) that the judgment was not yet final when the court accepted the verdict, or (2) that the plaintiffs' subsequent motion for interest triggered a new appeal period under Practice Book § 63-1 (c) (1). Although we agree that an objectively reasonable mistake of law may constitute good cause for filing a late appeal, we disagree that the Appellate Court was required to determine that the defendants' untimeliness was due to any such justifiable mistake of law in the present case.

With regard to the finality of the judgment, although there were no appellate cases definitively holding that unawarded offer of compromise interest does not delay the finality of a judgment on the merits, our decision today that it does not delay finality should come as no surprise to the defendants. As we explained in part I A of this opinion, this court's decisions have uniformly recognized that postverdict claims for relief delay finality only if they are related to compensation and require an assessment of the underlying merits of the case. See *Hylton* v. *Gunter*, supra, 313 Conn. 485 n.12; *Broadnax* v. *New Haven*, supra, 294 Conn. 297; footnote 9 of this

---

litigation. Footnote 14 of the concurring and dissenting opinion. Nor did this court endorse such an approach in *Alliance Partners, Inc.*, by making the observation that "it is difficult to see why, if the plaintiff was even somewhat confused about [the proper method for calculating the twenty day appeal period] . . . it nonetheless opted to wait for the potential twenty-first day to file [its appeal], rather than to take the obviously safer route and file on the potential twentieth day." *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212.

Georges *v.* OB-GYN Services, P.C.

opinion and accompanying text. Offer of compromise interest meets neither of these requirements. See *Accettullo* v. *Worcester Ins. Co.*, supra, 256 Conn. 673; *Blakeslee Arpaia Chapman, Inc.* v. *El Constructors, Inc.*, supra, 239 Conn. 742, 752. Thus, established final judgment principles should have put the defendants' counsel on notice that offer of compromise interest is not a type of relief that delays finality.[14]

In fact, this court, in 2009, noted that undetermined offer of compromise interest does not affect the finality of the judgment. *Earlington* v. *Anastasi*, supra, 293 Conn. 196–97 n.3. Although that aspect of *Earlington* was dictum, it was cited in a leading treatise on appellate practice for the proposition that "the lack of a ruling on a claim for [offer of compromise interest under § 52-192a] does not deprive the court of appellate jurisdiction on an otherwise final judgment." W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2019–2020 Ed.) § 61-1, p. 84, authors' comments. Thus, to the extent that the defendants claimed that they were confused about the operation of our final judgment rules in this context, the Appellate Court was well within its discretion to regard such confusion as unreasonable.[15] See *Alliance*

---

[14] Relying on *Nolan* v. *Milford*, 86 Conn. App. 817, 819, 862 A.2d 879 (2005), the concurring and dissenting justice contends that there was "at least a straight-faced argument" that final judgment was not rendered until the trial court resolved the parties' dispute as to the proper "end date" for calculating the offer of compromise interest. We disagree. *Nolan* addressed *discretionary* prejudgment interest under General Statutes § 37-3a; *Nolan* v. *Milford*, supra, 818–19; which this court has long recognized must be awarded before there can be an appealable final judgment. See *Balf Co.* v. *Spera Construction Co.*, supra, 222 Conn. 214–15; footnote 9 of this opinion and accompanying text. The plaintiffs' motion did not seek discretionary prejudgment interest under § 37-3a but, rather, mandatory interest under §§ 37-3b and 52-192a. *Nolan* does not suggest that claims for such awards delay the rendering of an otherwise appealable final judgment.

[15] The concurring and dissenting justice relies on additional aspects of the trial court proceedings that, in its view, provided the defendants with an objectively reasonable belief that the judgment was not final when the verdict was accepted on October 28, 2016. First, the concurring and dis-

Georges *v.* OB-GYN Services, P.C.

*Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212 (rejecting argument that mistake of law justified late appeal in part because correct rule was discussed in prior case law and cited in authoritative treatise on appellate practice).

Nor was the Appellate Court required to determine that the defendants' untimeliness was due to a reasonable, albeit mistaken, belief that Practice Book § 63-1 (c) (1) provided them with a new appeal period. Nothing in the text of § 63-1 (c) (1), or our case law interpreting it, remotely suggests that a postjudgment motion for mandatory interest, such as the one that the plaintiffs filed on November 8, 2016, alters any aspect of the underlying judgment. Although there was no prior appellate decision holding that § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something that the Appellate Court could consider,[16] does not mean that there was "confu-

senting justice notes that the plaintiffs filed a motion to request the offer of compromise interest even though trial courts are required to impose such interest sua sponte without the need for a motion. We fail to see why this would have added to the defendants' confusion. If anything, we believe it is objectively *unreasonable* to suspect that a claim for relief that must automatically be awarded at the statutorily prescribed rate could affect the finality of the judgment.

Second, the concurring and dissenting justice contends that the plaintiffs' motion for interest suggested that the plaintiffs themselves believed that the judgment had not yet been rendered on October 28, 2016. He relies on the following statement from the plaintiffs' motion: "Section 52-192a (c) directs the court to add 8 percent annual interest to the amount recovered by the plaintiffs, running from the date the complaint in this action was filed . . . to ninety days following the rendering of the verdict, which occurs on January 26, 2017." This is a true statement: January 26, 2017, *is* approximately ninety days after the verdict was returned on October 28, 2016. The plaintiffs made the statement in the course of arguing for what they believed the correct "end date" was for calculating the offer of compromise interest when postjudgment interest under § 37-3b also is in play. Although this argument reflected the plaintiffs' understanding about how the competing interest statutes operate, it does not suggest any confusion on the plaintiffs' part about the date final judgment was rendered.

[16] The concurring and dissenting justice asserts that, because the Appellate Court denied the defendants' motion to suspend the rules of practice to

Georges *v.* OB-GYN Services, P.C.

sion" in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion.[17]

The present case is similar in many respects to *Alliance Partners*, *Inc.* In that case, this court concluded that the Appellate Court did not abuse its discretion in denying an appellant's motion for permission to file a

permit a late appeal in an order without any explanation, "we have no idea whether the Appellate Court considered the absence of on point case law or whether it simply enforced deadlines in an uncompromising fashion." Footnote 6 of the concurring and dissenting opinion. To the contrary, we must indulge "every reasonable presumption . . . in favor of the correctness of the [Appellate Court's] ruling." (Internal quotation marks omitted.) *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, supra, 263 Conn. 210. Therefore, to the extent that the defendants raised the lack of pertinent authority in their motion to suspend the rules of practice to permit a late appeal, we must presume that the Appellate Court considered it in the context of conducting a proper inquiry into whether there was good cause for the defendants' failure to file a timely appeal.

[17] The concurring and dissenting justice contends that, in fashioning postjudgment interest awards under § 37-3b, trial courts, at least arguably, have discretion to determine the appropriate interest rate because the statute does not mandate any particular rate but merely provides that interest shall be calculated "at the rate of ten per cent a year, and no more . . . ." General Statutes § 37-3b (a). Even if we assume, without deciding, that courts do have such discretion, this could not reasonably have suggested to the defendants that an award of § 37-3b interest "alter[s]" the judgment rendered in connection with the jury's award of compensatory damages so as to create a new appeal period under Practice Book § 63-1 (c) (1). Indeed, this court explained years before the defendants' appeal that § 37-3b interest is separate and distinct from compensatory damages awarded by a jury: "[I]nterest pursuant to § 37-3b is computed only after and upon the amount of judgment. It is calculated *after* the trier of fact has calculated the amount of damages . . . . If, within twenty days, the defendant pays the damages awarded, then no interest is due. . . . Interest accrues only if the damages are not paid. An award of interest, therefore, first necessitates a factual finding of a debt now due—a specific liquidated sum due. *Thus*, *interest awarded pursuant to § 37-3b is in addition to and based upon the amount of damages as determined by the trier of fact. Postjudgment interest, therefore, cannot be an element of damages.*" (Citation omitted; emphasis altered; internal quotation marks omitted.) *Hicks* v. *State*, supra, 297 Conn. 804. A review of *Hicks* should have suggested to the defendants that the plaintiffs' motion for § 37-3b interest did not alter the underlying judgment for purposes of Practice Book § 63-1 (c) (1).

Georges *v.* OB-GYN Services, P.C.

late appeal when the appeal was filed one day after the
deadline and the justifications proffered by the appellant in its motion—that the rules of practice governing
how to calculate the twenty day appeal period were confusing—were unpersuasive. Id., 211–12. This court
explained that there was "no reasonable basis" for the
appellant's confusion in light of prior case law and Practice Book § 63-2, which "clearly indicate[d]" the way
to calculate the twenty day period. Id.

We disagree with the concurring and dissenting justice's attempts to distinguish *Alliance Partners, Inc.* As
in that case, we see no reasonable basis, in light of our
prior discussion in this opinion, for the defendants'
claimed belief that there was no appealable final judgment when the trial court accepted the verdict on October 28, 2016, or that the plaintiffs' subsequent motion
for offer of compromise and postjudgment interest triggered a new appeal period. Additionally, by disallowing
an appeal filed just one day after the deadline, even
though there is a statutory right to appeal and the twenty
day period is not jurisdictional, an inescapable lesson
from *Alliance Partners, Inc.*, is that adhering to the
Appellate Court's policy of denying untimely appeals
in the absence of exceptional circumstances is one that
this court takes seriously.

Finally, we disagree with the defendants that the size
of the verdict, $4.2 million, renders the Appellate
Court's refusal to hear the appeal an abuse of discretion,
particularly in light of the wholly inadequate explanations proffered by the defendants for why they failed
to appeal until approximately one month after the deadline. To be sure, this court has recognized that an
"unyielding policy requiring strict adherence to an
appellate limitation period—no matter how severe or
unfair the consequences—does not serve the interests

Georges *v.* OB-GYN Services, P.C.

of justice.'' *Banks* v. *Thomas*, 241 Conn. 569, 586, 698
A.2d 268 (1997). Nonetheless, the principal question
is whether the defendants have met their burden of
''establish[ing] good cause for [their] failure to file a
timely appeal.'' *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 211. They plainly have
not done so. Although the gravity of the consequences
of a dismissal to the appealing party is not wholly irrelevant to the good cause analysis, we are not persuaded
that, under the circumstances of the present case, the
size of the verdict, in and of itself, compels the conclusion that the Appellate Court abused its discretion.[18]

In summary, in light of our limited scope of review,
the Appellate Court's well known policy of managing
its own crowded docket, and the lack of any persuasive
justification for the late filing, we cannot conclude that
the Appellate Court manifestly abused its broad discretion or worked injustice by determining that the defendants had failed to establish good cause under Practice
Book §§ 60-2 (5) and 60-3. See id., 210 (''[r]eversal is
required only where an abuse of discretion is manifest
or where injustice appears to have been done'' (internal
quotation marks omitted)). Whether we might have
exercised our discretion differently is not the question
before us. We reiterate, however, our observation in
*Alliance Partners, Inc.*, that our decision in the present
case ''does not mean . . . that any exercise of discretion by the Appellate Court in denying [a motion for

---

[18] We note that the concurring and dissenting justice also contends that
''the plaintiff[s] did not argue that [they] would have suffered any prejudice
or undue delay from the granting of permission to file a late appeal beyond
the delay normally associated with a timely filed appeal.'' We read the
plaintiffs' opposition to the defendants' motion to suspend the rules of
practice to permit a late appeal, however, as arguing that allowing the late
appeal would cause undue delay and that they would be prejudiced because
the late appeal would further delay their access to the damages and interest
awards, which, given Jenniyah Georges' debilitating injuries, ''Jenniyah
[Georges] needs now.''

Georges *v.* OB-GYN Services, P.C.

permission to file] a late appeal will find a welcoming
eye in this court. . . . Our decision in the present case
means only that each case must stand or fall on its own
merits; and the merits in this case do not persuade us
that the Appellate Court abused its discretion.'' (Cita-
tions omitted.) Id., 214–15.

The judgment of the Appellate Court is affirmed.

In this opinion McDONALD, KAHN and ECKER,
Js., concurred.

D'AURIA, J., with whom PALMER, J., joins, concur-
ring in part and dissenting in part. I agree with part I
A and B of the majority opinion but dissent from part
II. Although the court's holdings today in both part I A
and B establish or clarify the law in a confusing area
of the law, I ultimately agree that the majority properly
applies our law and that the defendants' appeal from the
judgment on the jury's verdict was untimely. The Appel-
late Court therefore properly granted the motion filed
by the plaintiff Marie Leoma[1] to dismiss that part of the
appeal that ''relates to the October 28, 2016 judgment
. . . .'' I disagree with part II of the majority opinion,
however, which holds that the Appellate Court properly
denied the motion for permission to file a late appeal,
which was filed by the defendants, OB-GYN Services,
P.C., and Brenda Gilmore. Instead, I believe that the
defendants' appeal should be heard on its merits.

The majority holds in part I A and B of its opinion
that, after a favorable jury verdict, a plaintiff's motion
for interest pursuant to both General Statutes §§ 52-
192a (c) (prejudgment offer of compromise interest)
and 37-3b (postjudgment interest) neither delays entry
of a final judgment for purposes of appeal nor tolls the
appeal period pursuant to Practice Book § 63-1 (c) (1)

---

[1] Although Jenniyah Georges also is a plaintiff, in the interest of simplicity,
we refer to Maria Leoma as the plaintiff throughout this opinion.

Georges *v.* OB-GYN Services, P.C.

(motion that, "if granted, would render a judgment, decision or acceptance of the verdict ineffective," creates a new appeal period). Given the circumstances of this case and the confusion that preceded today's decision in this area of appellate practice, I believe that the Appellate Court incorrectly determined that the defendants lacked good cause to justify filing a late appeal. I reach this conclusion fully aware of the deferential standard of review we apply to such rulings of the Appellate Court. Our case law commands that, to call this ruling an error, we must conclude that the Appellate Court abused its discretion. In my view, we should make clear—to ourselves and to the Appellate Court—that, when exercising discretion to accept a late appeal, an appellate court must consider whether there exists an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or has been tolled. If so, this factor should weigh heavily —if not dispositively—in the balance in determining whether to accept the late appeal. If objectively reasonable good faith confusion exists, and no other factors weigh against granting the motion to file a late appeal— such as prejudice or undue delay beyond the delay normally associated with a timely filed appeal—in my view, an appellate court abuses its discretion by denying a party permission to file a late appeal. For example, if reasonable good faith confusion exists and the only factor weighing against granting permission is docket control, I do not believe an appellate court properly exercises its discretion by denying permission to file a late appeal. Punishing a party by disallowing its appeal from being heard is a drastic sanction when—as in a case like the present one—there was not clear guidance for determining an appeal deadline. Applying a proper standard, I believe that, under the circumstances of this case, it was an abuse of discretion not to grant a motion to file a late appeal.

Georges *v.* OB-GYN Services, P.C.

I

The majority and I do not disagree on the material facts and procedural history that the record discloses. On May 16, 2013, the plaintiff filed an offer of compromise to settle her medical malpractice claim against the defendants for $2 million. The defendants did not accept. On October 28, 2016, the jury returned a $4.2 million verdict in favor of the plaintiff. The trial court accepted the verdict that same day.

On November 8, 2016, during the twenty day appeal period, the plaintiff filed a motion with the trial court seeking offer of compromise interest pursuant to § 52-192a (c) and postjudgment interest pursuant to § 37-3b. No other entries appear on the electronic docket for the next fifteen days: no party filed a pleading, and the court undertook no action. In the plaintiff's view, the defendants would have had to file any appeal by November 17, 2016.

On November 23, 2016—the day before Thanksgiving—the trial court issued an order directing the parties to appear on December 8, 2016, for argument on the plaintiff's motion. The following Monday, November 28, 2016, an entry appeared on the docket, stating, "judgment on verdict for plaintiff."

According to the plaintiff's counsel, the issue the court was to address at the December 8, 2016 hearing was: "[O]n what date does offer of compromise interest stop and does postjudgment interest begin?" Each statute establishes a different interest rate and provides alternate dates for when each type of interest *begins*. However, § 52-192a (c) does not provide for when prejudgment offer of compromise interest *ends*, including in cases in which both types of interest are awarded.[2]

---

[2] General Statutes § 52-192a (c) provides in relevant part: "After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal

Georges *v.* OB-GYN Services, P.C.

On December 12, 2016, the trial court issued a decision concluding that the "end date" for calculating offer of compromise interest was the date judgment entered, which it clarified was October 28, 2016, the date the verdict was accepted.[3] This meant that *no* interest would accrue for twenty days after the verdict. Postjudgment interest under § 37-3b would then begin to accrue if the defendants did not satisfy the judgment.[4]

On December 16, 2016, four days after the trial court's ruling on interest, the defendants appealed to the Appellate Court, challenging both that ruling and the jury's ver-

to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action or application under section 8-132 was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint or application. If such offer was filed later than eighteen months from the date of filing of the complaint or application, the interest shall be computed from the date the offer of compromise was filed. . . ."

General Statutes § 37-3b (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, shall be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date that is twenty days after the date of judgment or the date that is ninety days after the date of verdict, whichever is earlier, upon the amount of the judgment."

[3] The trial court indicated that the docket "entry of 'judgment on verdict for plaintiff' entered by the courthouse clerk on November 28, 2016," did not "intend to indicate that the date of judgment was November 28, 2016 . . . ." This was a "misimpression [that] shall be corrected." Under the plaintiff's theory—confirmed by this court's decision today—the defendants' appeal was already twenty-five days late at this belated point of clarity.

[4] The trial court awarded the plaintiff $1,639,496.55 in offer of compromise interest (8 percent), which it determined ran from the date the complaint was filed to the date judgment entered. It also awarded postjudgment interest, to be calculated at 10 percent per year, beginning twenty days from the date of judgment. Thus, under the trial court's order, interest did not run under either theory during the twenty day appeal period. The plaintiff had argued that offer of compromise interest should run from the date the complaint was filed to ninety days following the return of the jury verdict and that postjudgment interest should run from the ninety days following the date of the verdict so that there was no break in the interest.

Georges *v.* OB-GYN Services, P.C.

dict.[5] On December 22, 2016, the plaintiff moved to dismiss the defendants' appeal from the October 28, 2016 judgment on the jury verdict. On December 30, 2016, the defendants opposed the motion and, at the same time, moved the Appellate Court for permission to file a late appeal, pursuant to Practice Book § 60-2 (5).

On February 8, 2017, the Appellate Court granted the plaintiff's motion to dismiss the defendants' appeal, "as it relates to the October 28, 2016 judgment," and denied the defendants' motion for permission to file a late appeal. The defendants filed a petition for certification to appeal with this court, which we dismissed because their appeal to the Appellate Court had not been finally determined. See General Statutes § 51-197f.

The defendants' appeal concerning the trial court's December 16, 2016 interest determinations proceeded, and the Appellate Court affirmed the judgment of the trial court. *Georges* v. *OB-GYN Services*, *P.C.*, 182 Conn. App. 901, 184 A.3d 840 (2018). The defendants then filed another petition for certification to appeal from the Appellate Court's dismissal of their previous appeal, which we granted. *Georges* v. *OB-GYN Services*, *P.C.*, 330 Conn. 905, 192 A.3d 426 (2018).

II

The Appellate Court is indisputably the "workhorse" of our appellate system, administering and adjudicating more than 450 appeals annually. See W. Horton & K. Bartschi, "2016 Appellate Review," 90 Conn. B.J. 221, 231 (2017). Without sacrificing fairness, our Appellate Court colleagues handle hundreds more appeals annually than this court, with a dispatch we aspire to emulate. "[A]ppellate tribunals must exercise their discretion to determine

---

[5] The defendants' preliminary statement of issues indicated that the defendants intended to raise on appeal a claim that the trial court had improperly admitted certain expert testimony and provided the jury with an incorrect instruction on damages.

whether a late appeal should be permitted,'' and ''we review the Appellate Court's decision under the abuse of discretion standard.'' (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 210, 820 A.2d 224 (2003). I take seriously both the size of the Appellate Court's caseload and this deferential standard of review. Thus, I would ordinarily be reluctant to conclude that a coordinate appellate tribunal has abused its discretion in enforcing rules regarding the timeliness for taking appeals. Several observations about this standard of review are in order, however, as I undertake to apply it.

First, although we have acknowledged that the Appellate Court has ''broad authority to manage its docket''; id., 212; we have provided very little guidance on how that court should go about exercising that discretion, including when it applies the very same rules we apply in determining whether to permit a late filing. We have indicated that an appellate court appropriately considers a ''variety of factors,'' including, but not limited to, the reason for the late filing, the nature of the underlying case, whether the application for permission is opposed, and the interests of judicial economy. See *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 274, 77 A.3d 113 (2013) (application for permission to file late petition for certification to appeal); see also *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 61–62, 727 A.2d 213 (1999) (petitioner's late appeal fell within Appellate Court's policy of permitting such appeals only in exceptional circumstances). Consistent with these factors, it is also appropriate to consider the extent of any prejudice to the objecting party. See *Meribear Productions, Inc.* v. *Frank*, 193 Conn. App. 598, 606, 219 A.3d 973 (2019) (''allowing the defendants to file a late appeal will not prejudice the plaintiff''); see also *Janulawicz* v. *Commissioner of Correction*, supra, 274–75 (''because there frequently is no material prejudice arising from the

Georges *v.* OB-GYN Services, P.C.

late filing, as we have indicated, we often agree to consider the merits of untimely petitions otherwise in compliance with our rules of practice''). Beyond that, we have provided almost no direction, including in situations in which the timeliness of the filing of an appeal is subject to legitimate question.

It is true that we have stated that the Appellate Court ''legitimately has adopted a policy of docket control 'that, in other than exceptional cases, the need to address cases that were filed timely outweighs the need to permit appeals that are in fact late.' '' *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212, quoting *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 61. We have also recognized, however, that ''[j]udicial discretion . . . is always a legal discretion, exercised according to the recognized principles of equity.'' (Internal quotation marks omitted.) *Burton* v. *Browd*, 258 Conn. 566, 569–70, 783 A.2d 457 (2001). This discretion ''should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice.'' (Internal quotation marks omitted.) Id., 570. A ruling denying permission to file a late appeal forecloses entirely a party's statutory right to appellate review. We have therefore been careful to note that deference to the Appellate Court ''does not mean . . . that any exercise of discretion by the Appellate Court in denying a late appeal will find a welcoming eye in this court.'' *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 214. I interpret this to mean that we can and should construe and apply our rules—including rules concerning late appeals—to provide the Appellate Court with appropriate guidance on how to exercise its discretion.

Second, unlike the situation in most instances of a *trial court's* exercise of discretion, we have very little in the record explaining the basis of the Appellate Court's ruling. Other than the cryptic orders granting the plain-

Georges *v.* OB-GYN Services, P.C.

tiff's motion to dismiss (in part) and denying the defendants' motion to permit a late appeal, we do not know precisely how the Appellate Court exercised its discretion, including which of the previous listed factors it considered, how close it found the question or whether it would have permitted a late appeal if any factors were different, such as if the defendants had recognized their mistake earlier and appealed more promptly. I intend no criticism by this observation. Both this court and the Appellate Court routinely and appropriately issue such orders without explanation. Cf. *Meribear Productions, Inc.* v. *Frank*, supra, 193 Conn. App. 599, 602 (published opinion in which Appellate Court exercised discretion to grant, nunc pro tunc, defendants' motion to file late appeal and denying plaintiff's motion to dismiss where defendants improperly filed appeal too early when judgment was not final, which became apparent only after Supreme Court review). However, given that appellate courts must consider a "variety of factors" when ruling on motions to accept late appeals; *Janulawicz* v. *Commissioner of Correction*, supra, 310 Conn. 274; the absence of any explanation for the ruling, in my view, makes entirely deferential review problematic. Said another way, I am reluctant to defer reflexively to discretion exercised in a fashion that is not manifest.[6] Cf. *State* v. *Fernando V.*, 331 Conn. 201, 213, 202

[6] For example, the majority states: "Although there was no prior appellate decision holding that [Practice Book] § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something that the Appellate Court could consider, does not mean that there was 'confusion' in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion." (Emphasis in original; footnote omitted.) Text accompanying footnotes 16 and 17 of the majority opinion. I will address whether it is appropriate to conclude that the Appellate Court abused its discretion. It is enough for now to point out that we have no idea whether the Appellate Court considered the absence of on point case law or whether it simply enforced deadlines in an uncompromising fashion. Either way, I would conclude that the Appellate Court abused its discretion. Either it did not consider this issue, which should have factored into its decision, or it incorrectly determined that there was not objectively reasonable, good faith confusion.

Georges *v.* OB-GYN Services, P.C.

A.3d 350 (2019) (declining to rule on claim advanced, for first time, on appeal seeking to sustain evidentiary objection at trial because ''[w]e cannot determine whether the trial court abused an exercise of discretion that it neither made nor was asked to make'').

Finally, and relatedly, unlike when we review a discretionary *trial court* ruling,[7] our review of this discretionary *Appellate Court* ruling does not involve an exercise of discretion entirely unique to the Appellate Court. By that I mean that the deference we afford to the Appellate Court when ruling on a motion to permit a late appeal is not a function of our being ill-equipped to rule on such motions. In fact, this court also rules on motions to dismiss appeals and motions for permission to file late appeals. See, e.g., *Francis* v. *Fonfara*, 303 Conn. 292, 295 n.6, 33 A.3d 185 (2012) (motion for permission to file late writ of error granted after adverse trial court ruling). Rather, the deference we afford our fellow tribunal in the appellate system is rooted in the fact that it handles a greater volume of appeals than this court. Most—but not all—appeals are filed first in the Appellate Court. See General Statutes §§ 51-197a and 51-199. Therefore, it is one thing when reviewing a *trial court's* discretionary ruling to recite the familiar

---

[7] To cite just two examples, we have explained the need to defer to a trial court's rulings on evidence and awards of attorney's fees because the trial court is in the unique position of having conducted the trial. See, e.g., *State* v. *Collins*, 299 Conn. 567, 593 n.24, 10 A.3d 1005 (''the abuse of discretion standard reflects the context specific nature of evidentiary rulings, which are made in the heat of battle by the trial judge, who is in a unique position to [observe] the context in which particular evidentiary issues arise and who is therefore in the best position to weigh the potential benefits and harms accompanying the admission of particular evidence'' (internal quotation marks omitted)), cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011); *Bobinski* v. *Kalinowski*, 107 Conn. App. 622, 628–29, 946 A.2d 283 (''''we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case' ''), cert. denied, 289 Conn. 919, 958 A.2d 150 (2008). Thus, I find distinguishable the cases the majority cites, such as *State* v. *Holley*, 327 Conn. 576, 628, 175 A.3d 514 (2018), which reviewed trial court rulings for abuse of discretion.

Georges *v.* OB-GYN Services, P.C.

refrain that, on appeal, "the question is not whether any one of us, *had we been sitting as the trial judge*, would have exercised our discretion differently." (Emphasis added; internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 18, 878 A.2d 1103 (2005). However, I find it harder to disclaim any obligation to scrutinize with some rigor the denial of a motion to permit a late appeal because this court is called on to make similar rulings (albeit not as often). Under these circumstances, one appellate court applying different criteria than another in assessing a late filed appeal borders on the arbitrary.

Our rules require that a party seeking permission to file a late appeal must show good cause for the late filing. See Practice Book § 60-2 (5). An appellate court will customarily allow a late filing if "unusual circumstances" or "exceptional cases" justify granting such permission. (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 212, 213. Consistent with our case law and our rules of practice, I would hold that an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run, or whether the appeal period has been tolled, must weigh heavily in an appellate court's determination of whether "good cause" justifies permitting a late appeal. Cf. *Morici* v. *Jarvie*, 136 Conn. 370, 371, 71 A.2d 556 (1950) ("[w]here counsel mistakenly but in good faith proceed on the assumption that a finding is necessary, file a request for a finding and draft finding and, under the second provision in [former Practice Book] § 341, do not file assignments of error with the appeal, it certainly would not ordinarily be just to preclude them from filing assignments when they discover that a finding is not necessary, and thus prevent them from prosecuting an appeal"). Although I agree that a delinquent appellant should not "obtain the benefit of the appellate process after contributing to its delay, to the detriment of others with appeals pending who have complied with the rules and

Georges *v.* OB-GYN Services, P.C.

have a right to have their appeals determined expeditiously''; (internal quotation marks omitted) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 213; I do not agree that an objectively reasonable, good faith mistake of law does not constitute good cause in the absence of countervailing factors. If objectively reasonable confusion exists, and no other factor weighs against granting permission to file a late appeal, such as prejudice or undue delay beyond the delay normally associated with a timely filed appeal—in my view, docket control alone does not outweigh this good cause. See footnote 14 of this opinion.

In the present case, in which no prejudice or allegation of undue delay has been raised, beyond the delay normally associated with a timely filed appeal while postjudgment interest is running, and the granting of the appeal would not have caused an undue delay, the Appellate Court either did not consider the defendants' objectively reasonable good faith confusion or determined that the defendants' confusion was either unreasonable or outweighed by the need for docket control. Either way, I conclude on this record that the Appellate Court abused its discretion by denying the defendants permission to file a late appeal.

III

The benchmark against which the majority measures the Appellate Court's denial of the defendants' late appeal is this court's unforgiving decision in *Alliance Partners, Inc.*, a case I find entirely distinguishable. The plaintiff filed its appeal in *Alliance Partners, Inc.*, a single day late. *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 207. Upon the defendant's motion, the Appellate Court dismissed the appeal and denied the plaintiff permission to file a late appeal. Id. The plaintiff argued that its one day delay in filing the appeal arose from a misunderstanding of law, namely, the plaintiff's

Georges *v.* OB-GYN Services, P.C.

counsel "[mis]read [Practice Book § 63-2] . . . to not include the first and last days of filing for purposes of counting the [twenty day] appeal period. Consequently, [the plaintiff] filed [its] appeal on the [twenty-first] day and not the twentieth day." (Internal quotation marks omitted.) Id., 208.

Central to the court's reasoning rejecting the plaintiff's argument in *Alliance Partners, Inc.*, was that it could "perceive no reasonable basis" for any "assertion of confusion" about the last day for filing an appeal, given that Practice Book 63-2 provides in relevant part: "[I]n determining the last day for filing any [documents] . . . [the] last day shall, and the first day shall not, be counted." (Internal quotation marks omitted.) Id., 211. If there were any doubt, the court noted, consulting "an authoritative treatise on our appellate practice" would havedispelled any confusion, as it "made the same point in clear language. 'In determining the last day for filing papers, the last day is included and the first day is not.' " Id., 212, quoting C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 4.11, p. 153.

In contrast to the situation in *Alliance Partners, Inc.*, the events that transpired in the present case after the jury's verdict were, in my view, susceptible to reasonable confusion sufficient to constitute "good cause" and to justify the defendants' late appeal. Specifically, as the plaintiff's counsel acknowledged at oral argument before this court, a motion for offer of compromise interest need not be filed during the appeal period and is most often filed after the appeal period. In fact, it is unclear that any motion needs to be filed at all; instead, the court adds offer of compromise interest as a ministerial matter.[8] An arguably unnecessary motion, filed dur-

_____

[8] Section 52-192a (c) contains no mention of either the need for a motion or a time period for a motion for offer of compromise interest to be filed. Instead, it directs the trial court to "examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to

Georges *v.* OB-GYN Services, P.C.

ing the appeal period and raising new issues concerning calculation of interest, can be viewed objectively as adding confusion to whether the judgment was final. As for postjudgment interest, no appellate court has definitively determined whether the 1997 amendment to § 37-3b[9] makes 10 percent interest in all ways mandatory or whether the trial court retains some discretion over the extent of an award of interest.

In the present case, the plaintiff—the prevailing party —filed a motion seeking awards of *both* types of interest, did so within the twenty day appeal period, and the trial court set the motion down for a hearing. The question posed by the defendants' appeal is whether that motion either (1) delayed the entry of a final judgment, or (2) tolled the appeal period under Practice Book § 63-1 (c).

A

Ultimately, I agree with the majority's well reasoned opinion that a motion for offer of compromise interest neither delays entry of a final judgment nor tolls the appeal period. Specifically, I agree with the majority that offer of compromise interest "does not entail any examination of matters encompassed within the merits of the underlying action" and that interest under § 52- 192a (c) is "collateral to the judgment and does not affect its finality for purposes of appeal." We have, at least in dictum, said as much in *Earlington* v. *Anastasi,* 293 Conn. 194, 196 n.3, 976 A.2d 689 (2009). I also agree that a motion for offer of compromise interest is not one that, "if granted, would render the judgment, decision

accept." General Statutes § 52-192a (c). If the plaintiff "has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . ." General Statutes § 52-192a (c). Conventionally, counsel often file a motion to assist the trial court with the math.

[9] See footnote 11 of this opinion.

Georges *v.* OB-GYN Services, P.C.

or acceptance of the verdict ineffective''; Practice Book § 63-1 (c) (1); and a trial court's ruling on such a motion therefore does not create a new appeal period. However, as it concerns the defendants' motion for permission to file a late appeal in the present case, two things are true.

First, on the issue of whether a motion for offer of compromise interest tolls the appeal period under Practice Book 63-1 (c), the majority candidly admits that ''our research has not revealed any pertinent Connecticut appellate authority . . . .'' In fact, to conclude that the plaintiff's motion did not toll the appeal period requires rejecting the application of one of our cases, *In re Haley B.*, 262 Conn. 406, 815 A.2d 113 (2003), and relying solely on the ''persuasive'' reasoning of a United States Supreme Court case, *Buchanan* v. *Stanships, Inc.*, 485 U.S. 265, 108 S. Ct. 1130, 99 L. Ed. 2d 289 (1988).[10] Moreover, unlike the situation in *Alliance Partners*, *Inc.*, resort to the rules of practice or a pertinent treatise would not have authoritatively resolved the question. As one prominent treatise states, ''[t]his area of the law is like threading a needle.'' W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2019–2020 Ed.) § 61-1, p. 84, authors' comments.

Second, the plaintiff's motion sought *more* than just offer of compromise interest. It also sought postjudgment interest pursuant to § 37-3b. There is also no binding authority on whether a motion for postjudgment interest remains in any way discretionary (at least as

_____

[10] It is true that Practice Book § 17-2 provides that, if no motions pursuant to Practice Book §§ 16-35 and 17-2A are filed, the date of the judgment ''shall be the date the verdict was accepted.'' Section 63-1 (b) provides similarly, pertaining to how notice of a judgment or decision is given. These provisions beg the question, as they do not purport to countermand Practice Book § 63-1 (c), concerning how the filing of certain motions creates a new appeal period.

Georges *v.* OB-GYN Services, P.C.

to the rate of interest) or delays entry of a final judg-
ment.[11] Cf. *Nolan* v. *Milford*, 86 Conn. App. 817, 819,
862 A.2d 879 (2005) (judgment was not final for purpose
of appeal until rate of prejudgment interest was deter-
mined when General Statutes § 37-3a provided for inter-
est rate of "ten per cent a year, and no more," because
trial court retained discretion to determine interest rate).
Although I agree with the majority that a motion for post-
judgment interest does not alter the judgment under
Practice Book § 63-1 (c) (1), I do not believe that this
was clear at the time of the plaintiff's postverdict motion
in the present case.

But even more particularly—and this is the real final
judgment brainteaser—the plaintiff's motion asked the
trial court to determine on what date offer of compro-
mise interest at 8 percent (under § 52-192a (c)) ended
and postjudgment interest at 10 percent (under § 37-
3b) began. At the hearing on this motion, the plaintiff's
counsel explained that, because the plaintiff sought
awards of both types of interest, "the debate . . . is,
on what date does offer of compromise interest stop
and does postjudgment interest begin." The trial court
decided the question adversely to the plaintiff's posi-

[11] Before 1997, interest pursuant to § 37-3b was discretionary, not manda-
tory. The statute was amended by Public Acts 1997, No. 97-58, § 2. Although
the amended version of § 37-3b was not at issue in *DiLieto* v. *County
Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 54, 74 A.3d 1212 (2013),
we indicated in that case that this amendment made awards of interest
under § 37-3b mandatory on the basis of the legislature's replacement of
the term "may" with the term "shall." Id., 42 n.5. Although this court has
interpreted this amendment to require an award of interest; id., 48; we have
not addressed whether the rate of interest awarded must be 10 percent.
The Appellate Court has previously interpreted a similar rate of interest
provision to provide the trial court with discretion in setting the interest
rate and then determined that this discretion meant that the judgment was
not final until the trial court set the interest rate. See *Nolan* v. *Milford*, 86
Conn. App. 817, 819, 862 A.2d 879 (2005) (trial court retained discretion to
determine prejudgment interest rate under General Statutes § 37-3a, as long
as rate was 10 percent or lower, where statutory interest rate was set at
"ten per cent a year, and no more").

Georges *v.* OB-GYN Services, P.C.

tion. See footnote 4 of this opinion. There is at least a straight-faced argument that, until the trial court resolved this issue, which would affect what interest rate applied, a final judgment had not been rendered, especially as it was unclear whether the court retained any discretion in determining the postjudgment rate of interest. Cf. *Nolan* v. *Milford*, supra, 86 Conn. App. 819 (judgment is not final until rate of prejudgment interest under § 37-3a is determined);[12] see also footnote 11 of this opinion.

In fact, the plaintiff's motion itself suggests that the plaintiff might have believed (mistakenly, the majority now makes clear) that judgment had not yet been rendered. Specifically, the plaintiff argued that § 52-192a (c) directs the court to add 8 percent annual interest from the date the complaint was filed "to ninety days following the rendering of the verdict, *which occurs on January 26, 2017.*" (Emphasis added.) The quoted language concerning "ninety days following" the verdict appears not in § 52-192a, but in § 37-3b, which provides for the recovery of 10 percent annual interest "computed from the date that is twenty days after the date of judgment or the date that is *ninety days after the date of verdict, whichever is earlier* . . . ." (Emphasis added.) General Statutes § 37-3b (a). The only way for January 26, 2017, to have been the "earlier" date, of course, would be if judgment had not yet been rendered at the time of the plaintiff's motion, as the plaintiff's pleading suggests. If judgment had been rendered on the day of the verdict (October 28, 2016), as the trial court ultimately ruled, November 17, 2016, would have been the "earlier" date (twenty days after the judgment). The plaintiff's own confusion over when judgment was ren-

[12] "Threading the needle" under *Nolan*, the defendants might even have had the better argument on this score. In light of the majority's opinion on this final judgment question, which I join, *Nolan* now seems to be of doubtful precedential value or, at least, should be confined precisely to the facts of that case.

Georges *v.* OB-GYN Services, P.C.

dered for purposes of calculating interest certainly is consistent with the defendants' confusion in determining the correct appeal period.

B

Because there is a need for bright lines in applying our rules, I agree with the majority that the defendants filed their appeal past the appeal deadline, as the majority determines it to be. But the record reflects more than a modicum of confusion (including on the plaintiff's part) about when the judgment became final or whether the appeal period was tolled, which I find reasonable in light of the state of the law at the time the verdict was returned. The plaintiff's motion triggered ongoing proceedings in the trial court, and the parties had been in court together just eight days before the defendants filed their appeal. After the trial court ruled on the plaintiff's motion regarding the proper application of the two interest statutes in play, the defendants appealed promptly (within four days). Neither the plaintiff, the Appellate Court nor the majority suggests that the defendants' arguments that they filed timely are frivolous or that they filed the late appeal in bad faith. Moreover, the plaintiff did not argue that she would have suffered any prejudice or undue delay from the granting of permission to file a late appeal beyond the delay normally associated with a timely filed appeal. See footnote 15 of this opinion. I would hold that it must weigh heavily in an appellate court's determination of whether "good cause" justifies permitting a late appeal when a party has delayed filing an appeal when there is an objectively reasonable basis for confusion, uncertainty or mistake about when the appeal period has run or whether the appeal period has been tolled. In the present case, such good cause existed, and it was an abuse of discretion by the Appellate Court to fail either to consider this good cause or to weigh it properly in light of the absence of any other factors justifying the

Georges *v.* OB-GYN Services, P.C.

court's denial of the defendants' motion for permission to file a late appeal.

In contrast, the majority holds that, although "good cause" may arise from an objectively reasonable mistake of law, the defendants' confusion in the present case was not reasonable. Unlike the situation in *Alliance Partners, Inc.*, in which the appellant could easily have looked at a treatise to determine the last day for filing an appeal, in the present case, this court had to clarify the law to determine when the appeal period began and whether it was tolled. Moreover, *Lucisano* v. *Lucisano*, 200 Conn. 202, 206, 510 A.2d 186 (1986), on which the majority relies for the proposition that a mistake of law regarding the date of judgment does not compel the granting of permission to file a late appeal, is plainly distinguishable from the present case. *Lucisano* did not involve an arguable mistake of law regarding the date of judgment or a tolling of that judgment for appeal purposes. Rather, the plaintiff in *Lucisano*, not recognizing that the trial court had not incorporated a provision of the parties' separation agreement into the judgment of legal separation, attempted to include in his appeal of a ruling more than two years later a challenge to the trial court's error, claiming that the issue was not apparent to him at the time. Id., 205–206. This court held that "[t]he fact that the need for an appeal may not have been evident until after the mandated filing period passed is not a circumstance that impels us to bypass the requirements of our rules of practice." Id., 206. We did not have reason to address whether a reasonable mistake of law regarding the date of judgment compels the court to grant a motion to file a late appeal when no other factors weigh against granting the motion.

The majority suggests that, "[a]lthough there was no prior appellate decision holding that [Practice Book] § 63-1 (c) (1) *does not* apply to this type of motion, the absence of a case directly on point, although something

Georges *v.* OB-GYN Services, P.C.

that the Appellate Court could consider, does not mean that there was 'confusion' in the law to such an extent as to render the Appellate Court's refusal to hear a late appeal a manifest abuse of discretion.'' (Emphasis in original; footnote omitted.) Text accompanying footnotes 16 and 17 of the majority opinion. We do not know, of course, whether, in exercising its discretion, the Appellate Court in fact considered that there was an absence of a case on point. Nor, in my view, is the question of whether, objectively speaking, there was uncertainty in the law at the time a matter on which we should appropriately defer to the Appellate Court. Rather, given the barren state of the law in light of the record before us, I would conclude that there was objectively reasonable, good faith confusion sufficient to constitute good cause and that the Appellate Court abused its discretion by denying the defendants permission to file a late appeal.

IV

If my position appears lenient to the objective observer, this does not derive from my own charitable spirit. Rather, I take my cues from several legal and policy declarations, including from our case law and rules of practice.

First, the legislature has provided litigants with a statutory right to appeal. See General Statutes §§ 51-197a and 52-263. Although time deadlines in our rules of practice are important, they are not statutory and therefore not a jurisdictional condition of this right. See *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 604, 181 A.3d 550 (2018); *LaReau* v. *Reincke*, 158 Conn. 486, 493–94, 264 A.2d 576 (1969). The twenty day time period in Practice Book § 63-1 (a) for filing an appeal is not mandatory. See, e.g., *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 103, 900 A.2d 1242 (2006). It is directory: Intended to encourage "dispatch in the proceedings . . . .'' (Internal quotation

Georges *v.* OB-GYN Services, P.C.

marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 598.[13] Also, although a condition of the right to appeal is that the judgment is "final," it has been left to the courts (and, principally, this court) to flesh out what "final" means. In certain contexts, we have done that with only a modicum of success. See, e.g., *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 738, 219 A.3d 744 (2019) (discussing "doctrinal confusion" over final judgment rule in application); see also id., 760 (*McDonald, J.*, dissenting) (discussing "murky state of our final judgment jurisprudence").

Clearly, our appellate courts have discretion to permit the late filing of any documents, including appeals. See Practice Book §§ 60-1 and 60-2 (5). This discretion, as in all appellate rules of practice, is to be applied consistent with the very first provision in our appellate rules of practice, which directs: "The design of these rules [of appellate procedure] being to facilitate business and advance justice, they will be interpreted liberally in any appellate matter where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 60-1. Finally, we have articulated a considered preference for having cases decided on their merits, rather than by the enforcement of nonjurisdictional rules. See, e.g., *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998) ("[o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy where

[13] The plaintiff benefited from similar maxims in this very case. The defendants claimed that the plaintiff's offer of compromise was defective because it cited to the wrong section of our rules of practice. They argued that the trial court should strictly construe the applicable provision of the rules of practice and not award the plaintiff any interest under § 52-192a (c). The plaintiff responded that there was no mandatory rule requiring citation to the rules of practice but, rather, that the rule was directory and that the failure to comply with this directory rule was not fatal, as long as the pleading provided the defendants with sufficient notice. The defendants' argument did not persuade the trial court, and the Appellate Court rejected it in a memorandum decision. See *Georges* v. *OB-GYN Services*, *P.C.*, supra, 182 Conn. App. 901.

Georges *v.* OB-GYN Services, P.C.

that can be brought about with due regard to necessary
rules of procedure'' (internal quotation marks omitted)).
I do not agree that, when a litigant presents a nonfri-
volous reason for confusion over when it must file an
appeal, our justice system does not afford that litigant
the grace to file a late appeal when that litigant's judg-
ment turns out to be wrong and no other factors except
for docket control justify the denial of permission to
file a late appeal. Although we do indeed afford a good
deal of discretion to the Appellate Court in managing
its docket, a policy of docket control that does not
account for good faith, but mistaken, interpretations of
the rules does not in my view constitute an appropriate
exercise of that discretion. Instead, a policy of docket
control in the absence of such countervailing factors,
such as prejudice and undue delay, merely constitutes
another way of enforcing a de facto jurisdictional appeal
period where the legislature has prescribed none.[14]

The holding in the present case means that these
defendants accidentally forfeited their statutory right
to appeal a $4.2 million judgment against them for mal-

[14] Both the plaintiff and the majority point out that the defendants could
have avoided this predicament in a number of ways. Of course, they could
have recognized the final judgment and filed a timely appeal, notwithstanding
the plaintiff's motion for interest, within the appeal period. They also could
have moved to extend the time within which to file an appeal. Or, if there
were any doubt, they could have appealed multiple times, as some commen-
tators suggest, and ''let the appellate court judges sort [it] out . . . .'' W.
Horton & K. Bartschi, supra, § 61-1, p. 84, authors' comments; see also E.
Prescott, Connecticut Appellate Practice and Procedure (5th Ed. 2016) § 4-
2:6.2e, p. 245. Putting aside that hedging your bets and following the ''appeal
early and often'' approach burdens both our clerks' offices and the opposing
party, the defendants obviously wish they *had* taken one of these actions.
But that these options would have been more prudent is simply a truism.
If all litigants managed to navigate our final judgment case law and our
rules of practice successfully, and always filed their appeals timely, there
would be no need for a provision permitting the filing of late documents,
including appeals, and no need for an appellate court to exercise its discre-
tion to permit late filings. See Practice Book §§ 60-2 and 60-3. The question
is whether good cause exists to permit a late appeal when an appeal is *not*
timely filed.

practice. The size of this verdict has absolutely nothing to do with my view, just as I am confident it has nothing to do with the majority's or the Appellate Court's considered views. When an objectively reasonable but mistaken understanding of the rules or the case law leads to a late filed appeal, this result would have to be the same whether the appellant were plaintiff or defendant, or a juvenile, criminal or family litigant. I find this inflexibility inconsistent with our rules of practice, which are designed to advance justice. In my view, the complete forfeiture of a party's legislatively provided right to appeal under these circumstances is wildly out of proportion to any procedural violation in the case. Cf. *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 71, 176 A.3d 1167 (2018) (sanction of nonsuit must be proportionate to violation); *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001) (same).[15]

If the answer to my point of view is that, only by enforcing the rules strictly—or, in this case, allowing the Appellate Court to do so—do we have any hope of securing compliance with those rules, count me as doubtful. Mistakes happen. Misjudgments, too. I do not recognize a system of justice that does not tolerate the potential for imperfection. Rather, this court "eschew[s] a mechanistic interpretation of our appellate rules in recognition of the fact that an unyielding policy requiring strict adherence to an appellate time limitation—no

---

[15] I am not indifferent to delay in appellate filings. It is possible that, in some cases, a three week delay in filing an appeal might in fact constitute prejudice. In the life of an appeal, that would be a very unusual case, where preargument conferences are scheduled and rescheduled and litigants are (appropriately) afforded extensions of time to file—or correct the filing of— every other document that our rules require. When measured against the forfeiture of a statutory right to appeal, and in consideration of the uncertainty in our final judgment law and the lack of expressed prejudice to the plaintiff, who took no steps in reliance on there *not* having been an appeal, three weeks delay is not significant.

Georges *v.* OB-GYN Services, P.C.

matter how severe or unfair the consequences—does not serve the interests of justice.'' (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, supra, 263 Conn. 213–14. "It is the courts, the legal profession and the public generally, not just the plaintiffs, who are the losers when serious cases like this one fail to be resolved on their merits because of some procedural deficiency.'' *Hughes* v. *Bemer*, 200 Conn. 400, 405, 510 A.2d 992 (1986) (*Shea, J.*, dissenting).[16]

Nor do I believe that, when there is objectively reasonable confusion over an appeal deadline, parties—counseled or otherwise—will be less careful if my view were to prevail because they can rely on an appellate court to entertain and grant a motion to file a late appeal. That is a dangerous game. Litigants have a great incentive to interpret rules correctly in the first instance. I see no floodgates of late appeals bursting open if appellate courts were to take account of such confusion when considering whether to permit late appeals.

Finally, I do not believe a malpractice action is the answer if an attorney were responsible for the mistake in the present case or in an analogous case. Demonstrating causation or prejudice under such circumstances (i.e., the appeal would have succeeded) is practically impossible. See *Bozelko* v. *Papastavros*, 323 Conn. 275, 284, 147 A.3d 1023 (2016) ("the plaintiff must prove that, in the absence of the alleged breach of duty by her attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment" (internal quotation marks omitted)). More-

___

[16] This court has come a long way since the days of *Hughes* v. *Bemer*, supra, 200 Conn. 400, *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988), and *Burton* v. *Planning Commission*, 209 Conn. 609, 553 A.2d 161 (1989). Both this court and the legislature have since acknowledged that "an overly strict adherence" to procedural requirements "would result in unnecessary unfairness." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 768, 900 A.2d 1 (2006).

720　　　　　NOVEMBER, 2020　　335 Conn. 669

Georges *v.* OB-GYN Services, P.C.

over, I do not believe that creating the need for another case in our court system "advances justice."

Accordingly, I respectfully concur in part and dissent in part.

———————————————